Bernard S. Meyer, J.
In this article 78 CPLR proceeding, the petition as amended states five claims or causes of action. The first asserts that petitioner, pursuant to a building permit, erected a church in the Village of Garden City; that it desires to establish in its existing facilities, with some modifications, a day care center; that the State Department of Social Services has approved establishment of the -day care center subject, however, to fire and safety inspection by appropriate officials of the village; that a request for such inspection was made, but refused until a special use permit for the center was obtained from the Village Board of Appeals; that the day care center is within *979 petitioner’s church activities and does not require a special use permit; and that the refusal to inspect was, therefore, arbitrary. The second alleges that, as a result of the refusal to inspect, petitioner applied for a special permit which was refused by the board, and that its refusal was not supported by the evidence; the third, that refusal of the board to permit operation of the day care center violates petitioner’s right to the free exercise of religion; the fourth, that the board’s decision discriminates against the underprivileged; the fifth, that the board’s decision discriminates against blacks.
For the reasons hereafter stated, the court concludes that petitioner is entitled to judgment on the first claim against the Bureau of Fire Prevention declaring that the day care center use does not require a special use permit and directing the bureau to make the inspection called for by 18 NYCRR 8.7 (d)(1) and deliver to petitioner a written statement that the premises are in compliance with local fire ordinances or stating in what respect they do not comply, and, if noncompliance is found, to make such other and further inspections as petitioner may request in order to establish compliance. Since it appears that the Fire Commissioner of the village is not an ‘ ‘ appropriate authority ’ ’ to make such inspection, the petition as to him is dismissed on the merits, and since the decision reached on the first claim makes it unnecessary to decide the other four claims, they are dismissed without prejudice.
The bureau’s answer sets forth as an objection in point of law that the petition fails to state a cause of action. The court has already ruled on the point in denying a prior motion to dismiss the petition, but the bureau was not then a party to the proceeding. The objection is overruled on the ground, more explicitly stated at pages 3 and 4 of the memorandum of May 11, 1970, that the Rules of the State Board of Social Welfare, which require (18 NYCRR 8.7 [d] [1]) that “For day care centers, a written statement from the local fire department or department of buildings or other appropriate authority shall be obtained indicating that it has inspected the premises and found them to be in compliance with the local fire ordinances ”, have the force of law, and, especially when read in conjunction with Village Ordinance 3.4(g) requiring the officers of the bureau “ to inspect * * * as often as may be necessary ”, impose a duty upon the bureau to inspect petitioner’s premises to determine whether, assuming that a day care center will be operated therein, the premises comply with local fire ordinances. Since that is all that the Board of Social Welfare Rule requires, it is clear that the bureau has never been cabed upon, as its *980 first defense suggests, impliedly to approve a use not authorized by the Village Zoning Ordinance. Indeed, it could well be argued that, by refusing to inspect until a special permit was obtained, the bureau had, by .presuming that a day care center was not a permitted use, arrogated to itself a zoning function with which it is not endowed. The bureau’s first defense is, therefore, dismissed.
Turning now to the main issue in the case, the court concludes, for two separate but related reasons, that petitioner may operate, or permit the operation of, a day care center on its premises without obtaining a special use permit. The first is the rule that municipal corporations are creatures of, and have only such powers as, are delegated to them by the State (Seaman v. Fedourich, 16 N Y 2d 94, 101; Matter of Brown v. Board of Trustees of Town of Hamptonburg School Dist., 303 N. Y. 484, 488; Holroyd v. Town of Indian Lake, 180 N. Y. 318, 322), and that therefore a village zoning ordinance “ insofar as it conflicts and hinders an overriding State law and policy favoring the care of * * * children, is void as exceeding the authority vested in ” the village. (Abbott House v. Village of Tarrytown, 34 A D 2d 821, 822; accord: Jewish Consumptives' Relief Soc. v. Town of Woodbury, 230 App. Div. 228, 234, affd. 256 N. Y. 619; see Incorporated Vil. of Lloyd Harbor v. Town of Huntington, 4 N Y 2d 182, 190-191.)
The policy of the State with respect to establishment and maintenance of day care centers has been etched in bold relief by the 1969 and 1970 sessions of the Legislature. As enacted or amended by chapter 1013 of the Laws of 1969, each of section 410-d of the Social Services Law, subdivision 7 of section 41 of the Private Housing Finance Law and the Youth Facilities Project Guarantee Fund Act (L. 1969, ch. 1013, § 14) state the legislative finding that: ‘ ‘ There is a serious shortage throughout the state of facilities suitable for use for the care of children of pre-school and primary school age whose parents are unable to provide such care for all or a substantial portion of the day or post-school day. Existing facilities are overcrowded with long waiting lists. Many such facilities are so located that they are not accessible to families in need of such services. The absence of adequate day care facilities is contrary to the interest of the people of the state, is detrimental to the health and welfare of the child and his parents and prevents the gainful employment of persons who are otherwise qualified because of the need to provide such care in their home during the day time hours.”
*981 The purpose of each of the three sections is to encourage the timely construction and equipment of such facilities, and section 410-d of the Social Services Law concludes: “ The provision of such facilities is hereby declared to be a public purpose which it is the policy of the state to encourage." Subdivision 2 of section 410 of the Social Services Law, enacted in 1965, had declared day care to be a proper municipal purpose for which moneys could be raised and expended, and section 15 of chapter 1013 of the Laws of 1969 strengthened that declaration by adding to section 77 of the General Municipal Law a new subdivision 2 authorizing a “ municipal corporation * * * [to] lease to a non-profit corporation * * * authorized to care for children * * * a public building or part thereof belonging to such municipal corporation, without expense or at a nominal rent". Finally, the overriding nature of the policy fixed by chapter 1013 is underscored by section 16 thereof which expressly provides: ‘ ‘ Insofar as the provisions of this act are inconsistent with the provisions of any other law, general, special or local, the provisions of this act shall be controlling."
The policy thus declared was reiterated by the 1970 Legislature, which in chapter 488 authorized school districts to provide, and social services officials to purchase from them, day care facilities, and by chapters 276-280 increased the funds available for financing and enacted other provisions which the Governor, in approving the bills, declared “will do much to encourage the further development of day care services to provide valuable educational and social experiences to children in their early childhood years, experiences of particular importance for children from disadvantaged homes." In the face of the legislative policy thus clearly and strongly stated and restated, the village’s zoning policy cannot stand.
The second reason is a social policy of even higher dimension: the constitutional prohibition against the abridgement of the free exercise of religion. Respondents concede, as indeed they must in the face of decisions such as Matter of Westchester Reform Temple v. Brown (22 N Y 2d 488); Matter of Diocese of Rochester v. Planning Bd. (1 N Y 2d 508); Matter of Community Synagogue. Bates (1 N Y 2d 445); Matter of Concordia Collegiate Inst. v. Miller (301 N. Y. 189), that religious and educational institutions enjoy a constitutionally protected status which severely limits application of normal zoning standards. They argue, however, (1) that a day care center is not a religious activity, and (2) that in any event the day care center here in question will be operated not by petitioner but by a separate *982 ■ entity, a not-for-profit corporation to be named the Fellowship Children’s Day Care Center, Inc.
The latter argument can be quickly disposed of. First, similar arguments have been made and overruled in Matter of Diocese of Cent. N. Y. v. Schwarzer (23 Misc 2d 515, 517, affd. 13 A D 2d 863) and Westbury Hebrew Cong. v. Downer (59 Misc 2d 387). Secondly, and more importantly, respondents do not contest the statement made in the permit application which is annexed as Exhibit A to the petition, that the church will operate the day care center “ through its Day Care Center Committee, the incorporators of the Fellowship Children’s Day Care Center, Inc., a non-profit organization.” Subdivision 3 of section 410 of the Social Services Law requires that social services officials either provide day care directly or purchase it from a nonprofit corporation, and subdivision 4 of section 410-e defines an “ eligible borrower ” as “ A non-profit corporation organized under the laws of the state of New York ”, a definition which is applicable under both title 5 and title 5-A of article 6 of the Social Services Law (see § 410, subd. 3). That the center will take the form of an affiliated but separate corporate entity in order to be eligible for State funding does not make the project, any the less an operation of the church. Though the benefit to the church is, from the point of view of section 3 of article XI of the New York State Constitution, “ a collateral effect ” of the Social Services Law day care provisions (Board of Educ. v. Allen, 20 NY 2d 109, 116, affd. 392 U. S. 236), the day care center is nonetheless an operation of the church which, if it is a proper religious activity, may not normally be abridged by zoning provisions.
The perimeter of protected religious activity is not easy to define. That it extends beyond prayer and sacrifice but not so far as the operation of a country club is the teaching of Matter of Community Synagogue v. Bates (1 N Y 2d 445, 453, supra). What falls between those extremes is adumbrated by Anderson’s suggestion (Zoning Law and Practice in New York State, p. 327, § 9.33) that ‘ ‘ Religious use * * * is broadly extended to conduct with religious purpose ’ ’, and Rathkopf’s statement (1 Law of Zoning and Planning, p. 19-22) “that the concept of what constitutes a church has changed from a place of worship alone, used once or twice a week, to a church used during the entire week, nights as well as days, for various parochial and community functions.” Though, asTthe Bates case declares (1 N Y 2d, p. 453) “ each case ultimately rests upon its own facts ’ ’, a review of prior decisions makes evident that operation of a day care center is (as the *983 briefs of both petitioner and amicus curiae stress) well within the ambit of religious activity. Sustained as religious activity have been: “ guidance of indoor and outdoor activities for youth and community work” (Matter of Community Synagogue v. Bates, 1 N Y 2d, p. 448); “ school; meeting room; kindergarten, small games, open field and hard-top play areas ” (Matter of Diocese of Rochester v. Planning Bd., 1 N Y 2d 508, 516, supra); production of television programs and correspondence courses involving the use of ‘1 modern office machinery and equipment, such as postage meters, automatic typewriters, mail-opening and sealing machines, teletype machines, addressograph machines, recording apparatus and a small offset press ” and the maintenance of a “ dining room, kitchen, printing shop, storage room” (Matter of Faith for Today v. Murdock, 11 A D 2d 718, affd. 9 N Y 2d 761); “ a gymnasium ” (Shaffer v. Temple Beth Emeth, 198 App. Div. 607, 609); (Matter of Temple Israel of Lawrence v. Plaut, 10 Misc 2d 1084); ‘ ‘ teaching of secular subjects ” (Westbury Hebrew Cong. v. Downer, 59 Misc 2d 387, 388, supra); “ meetings of the Boy Scouts and Girl Scouts composed of children of the congregation” (Matter of Garden City Jewish Center, 157 N. Y. S. 2d 435, 438).
Finally, the court notes that the papers present no triable issue of fact. Though the bureau has denied information concerning paragraphs 6 through 9, and denied outright paragraphs 10 through 16, those denials are either based on legal arguments dealt with above or, as to the denial of information, relate to facts established by petitioner’s papers and in no wise refuted by respondent. Much is made in respondent’s brief of the fact that no proper demand for inspection was made on the Bureau of Fire Prevention by respondent. While no formal request was directed to Glenn Cooper who, as Chief of the Fire Department, is also Chief of the Bureau of Fire Prevention, respondent has not controverted the affidavit of Natalie Mutari that she called the Fire Department and communicated to Lieutenant Wagner the desire of petitioner for an inspection in connection with the day care center it wished to open, nor is there any denial by respondent that the bureau was aware of the request, and in fact did, as Exhibit I to Chief Cooper’s affidavit evidences, make an inspection (which respondent now claims was but the regular annual inspection) on March 24, 1970. Clearly, the Bureau of Fire Prevention was aware of petitioner’s request and should not be permitted, in dealing with a village property owner whom it was established to serve, to hide behind the differentiation between the department and the bureau created by its unusual ordinance.