Bernard S. Meyer, J.
In a prior memorandum (64 Misc 2d 851), movants Bridener and Jaeka were held entitled as of right to intervene after judgment for the purpose of litigating their aggrievement by the court’s earlier decision (63 Misc 2d 978) and judgment in this article 78 proceeding. The memorandum so holding noted that a hearing was necessary ‘ ‘ in view of the existing church use and other surrounding circumstances and the subtle distinctions involved in assaying the difference between the conditions that will exist with the added day care use and those now existing without the use.” The hearing having been held, the court finds that neither movant has demonstrated the special or unique damages necessary to entitle him to intervene as a party. A short-form order has, therefore, been entered vacating the conditional order of November 9, 1970 and denying the intervention motion.
The evidence establishes that movant Bridener lives at 100 Euston Road, which is a corner plot on the northwest corner of *1028 Buston Road and Stewart Avenue and that movant Jacka lives at 109 Buston Road, which is on the east side of Buston Road, 270 feet north of Stewart Avenue. The Unitarian Universalist Church owns the entire blockfront on Stewart Avenue between Buston Road and Nassau Boulevard, the next north-south street to the east. Buston Road, according to the village map, is 50 feet wide. On its Buston Road boundary the church property runs back 270 feet, so that its northernmost line is contiguous with Mr. Jacka’s southerly line. As originally proposed a play area platform for outdoor play of the day care center children was to be located north of the church building about 60 feet from Mr. Jacka’s southerly line and about 100 feet from Mr. Bridener’s easterly line and in line of sight from both. With the concurrence of village authorities the site of the platform was moved, before the instant motion was brought, to the southeast quadrant of the church property on its Nassau Boulevard side. In that position it is blocked from view of both the Bridener and the Jacka property by the church building and is 143 feet from Mr. Jacka’s southerly line and 197 feet from Mr. Bridener’s easterly line.
Movants both testified that they felt aggrieved because of the noise that would be caused by the children using the playground area and by service trucks and teachers ’ cars that the use would require. Their real estate expert testified that on the basis of sales in other areas affected by day nurseries, day care centers and schools and of properties in the same areas not similarly affected, the value of homes so affected depreciated from 8 to 25% over current market for similar homes, and that in his opinion the proposed day care center use of the church property would cause depreciation in value of the market value that might otherwise be expected for movants’ properties.
Petitioner’s proof establishes, and the court finds, that the maximum number of children in the school will be 35, that the children will be transported in a minibus that will make three trips in the morning and three in the afternoon, that five additional service deliveries of food and milk per week will result from the center, that there will be 13 teachers most of whom will come by car, that there will be no adverse traffic effect from the day care center, on either Stewart Avenue, which now carries over 46,000 cars per day through its Nassau Boulevard intersection or on Buston Road, which carries 500 cars per day north of Stewart Avenue, that a maximum of 18 children will be outside in the play area for one hour in the morning and one hour in the afternoon, that there will be one employee for each six children while they are in the play area, and that the properties *1029 around the Garden City Community Church, which operates a half-day nursery school and has 18 children at a time outside for two separate one-hour periods each morning, have gone up in value over the past 16 years notwithstanding that it has operated the nursery school for all of that period.
Standing to sue is governed by the same criteria whether in an action for declaratory judgment or an article 78 proceeding (Blumberg v. City of Yonkers, 21 A D 2d 886, affd. 15 N Y 2d 791) or an action to restrain violation of a zoning ordinance (Marcus v. Village of Mamaroneck, 283 N. Y. 325; Rice v. Van Vranken, 225 App. Div. 179, affd. 255 N. Y. 541). Though CPLR 1012 (subd. [a], par. 2) is phrased in terms of “ interest ” rather than ‘ ‘ person * * * aggrieved ’ ’, as are the zoning statutes (e.g. — Village Law, § 179-b), the same criteria, it appears, also govern the right of intervention (Matter of Carriage Hill v. Lane, 20 A D 2d 914). Logically the result could hardly be otherwise, for it would make little sense to permit intervention only to hold that as to the intervenor the complaint had to be dismissed because he lacked standing.
The burden is, therefore, upon movants to establish that the granting of the relief requested in the petition will cause them to suffer special damage (Matter of Carriage Hill v. Lane, supra). Depreciation in value of the premises as real property arising from the proposed use must be shown (Cord Meyer Devel. Co. v. Bell Bay Drugs, 20 N Y 2d 211, 218; Matter of Haber v. Board of Estimates of City of N. Y., 33 A D 2d 571). Movants made out a prima facie case by proof that their properties abutted and were across the street from the church and that in the opinion of their expert depreciation in value would result (Daum v. Meade, 35 A D 2d 598; Matter of Manor Woods Assn. v. Randol, 29 A D 2d 778). But the diminution of use and enjoyment of abutting or neighboring property, without proof of economic loss, is insufficient to establish standing (Schapiro v. Town of North Hempstead, 35 A D 2d 596 [affg. this court’s unreported holding to that effect]; Matter of Moore v. Burchell, 14 A D 2d 572, mot. for lv. to app. den. 10 N Y 2d 709).
The matter turns, therefore, on the opinion of movants’ expert. Though the question as posed by the court’s memorandum was the depreciation over that already existing from the church use that could be attributed to use of the church property for a day care center, the expert acknowledged that he had made no study of sales prior to the establishment of the church and no study of the Garden City Community Church nursery school or of any nursery school or day care center in Garden *1030 City at all. He conceded also that the existing church use is an inharmonious use in a residential area even though permitted by the zoning, and that the day care center in Great Neck which he had chosen as one of his comparable situations was conducted in a residential-type building and, therefore, was not inharmonious. As to his other comparable situations, the ABC Day Nursery in Garden City South and the Pierce Country Day School in Roslyn, no evidence was submitted concerning whether the prior use of the properties in which they are located was harmonious or inharmonious. Although his report notes as to sale No. 17 that “ This house abuts ABC Day Nursery at the rear and church property on the south ”, his testimony as to sales 17 and 18 took no cognizance of the influence of the church on the difference in sales prices that he found, apparently attributing it all to the day nursery. Li light of his concession that the present church use is an inharmonious and depreciating factor and of the fact that he based his opinion on incomparable situations, the court concludes that his opinion is without foundation and must be disregarded.
Hi final analysis, the matter is governed by Stark v. Scudder (33 A D 2d 519) in which the Appellate Division affirmed on the opinion of Mr. Justice Taskeb at Special Term. Involved in that case was the validity of a zoning ordinance amendment that permitted an increase in a nonconforming restaurant use. A real estate broker testified that because of the traffic problem values of abutting properties had failed to keep pace with the general increase of values in the area. Holding that plaintiffs lacked standing to maintain the action, Mr. Justice Taskeb noted: “In the case at bar, the plaintiffs’ evidence tended to show that the existence of the restaurant at the north end of Bay view Avenue increased the traffic problem inherent in the geographical layout of the Village and the physical limitations on the width of Bayview Avenue, and that this traffic dilemma tended to depreciate the value of houses located on the street. There was no evidence whatever with respect to further depreciation resulting from an increase in the restaurant’s capacity now permissible under the amendment, and any inferences with respect thereto would be wholly speculative.” Likewise in the instant case there was no evidence whatsoever with respect to further depreciation resulting from the day care use over the depreciation already existing because of the inharmonious church use, and movants have, therefore, failed to establish that they will suffer special damage.