SOLID ROCK MINISTRIES INTERNATIONAL, Appellant,

v.

BOARD OF ZONING APPEALS OF the CITY OF MONROE, Appellee.

[Cite as *Solid Rock Ministries Internatl. v. Monroe Bd. of Zoning Appeals* (2000), 138 Ohio App.3d 46.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA99–10–170.

Decided June 5, 2000.

*Barrett & Weber, C. Francis Barrett, M. Michele Fleming* and *Karri K. Haffner,* for appellant.

*K. Philip Callahan,* for appellee.

WALSH, Judge.

Plaintiff-appellant, Solid Rock Ministries International, a.k.a. Solid Rock Church ("Solid Rock"), appeals[1] the decision of the Butler County Court of Common Pleas that affirmed the decision of defendant-appellee, the Board of Zoning Appeals of the city of Monroe, Ohio (the "board"), denying Solid Rock's application for a zoning approval for its property. For the reasons stated below, we reverse the trial court's decision and remand the matter for further proceedings.

Solid Rock is the owner of a sixty-acre tract of land located at 904 North Union Road in Monroe, adjacent to Interstate Highway 75. Solid Rock purchased the property in 1985 with the intent of constructing a church building thereon. The property is zoned "I–G" General Industrial District under the Monroe Zoning Code. A church is not a permitted use in an "I–G" zone but can be allowed as a conditional use subject to hearing and the possibility of restrictions being placed upon its use.

In 1985, Solid Rock applied to the board for a conditional use permit[2] to allow construction of its church building. The application originally did not seek a conditional use permit for the entire sixty acres. However, upon finding during a public hearing that by limiting the scope of the conditional use permit it could not use the remainder of the property for parking or any other use without applying for an additional conditional use, Solid Rock asked to expand the area of the conditional use to include almost the entire sixty acres to allow for parking and

---

1. We *sua sponte* remove this matter from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.

2. A conditional use permit is based upon "a legislative recognition that although certain uses are not necessarily inconsistent with the zoning objectives of a [city], their nature is such that their compatibility in any particular area depends upon surrounding circumstances. Thus, the legislative body provides for their inclusion in a [city] only upon administrative approval granted in accordance with legislatively prescribed standards and conditions." *Gerzeny v. Richfield Twp.* (1980), 62 Ohio St.2d 339, 341, 16 O.O.3d 396, 398, 405 N.E.2d 1034, 1036.

future expansion of its church facility. On December 18, 1985, Solid Rock was granted a conditional use permit (the "1985 permit") "to allow construction of a church" subject to the following four conditions:

"1. The conditional use be granted to the purchasing party only and not be conveyed to another party without review.

"2. The conditional use be granted for the area shown on the drawing submitted, within 100 feet of the north and south boundary lines of the property, and running between North Union Road and I–75.

"3. The conditional use be granted to the proponents to proceed to acquire the 60 acres and create their own buffer zone on either side of the proposed church, keeping the surrounding area the I–G General Industry zone.

"4. Schools are not permitted in an I–G General Industry zone, under Section 1171.04 of the Monroe Zoning Code."

Solid Rock subsequently built a sanctuary which is used for worship. It also eventually built parking lots, ball fields, several billboards, and a family recreation center that includes a gymnasium, offices, and classrooms. While Ronald Carter, Solid Rock's financial administrator, stated that a building permit had been obtained to build the recreation center, the record is devoid of any such permit or of any conditional use request. It appears from the record that at the time the recreation center was built, the city's then zoning enforcement officer determined that such center fit within the definition of a church under the 1985 permit.

In early 1998, Solid Rock formalized plans to build the Darlene Bishop Home, a facility for unwed pregnant teenage girls. The program is designed to provide unwed pregnant teenage girls with housing for one to eight months, prenatal care, life skills training, and a spiritual education during their pregnancy. The proposed facility includes a chapel as an integral part of its program. The spiritual training would include daily chapel services and spiritual education classes. The objective of the program is to help unwed pregnant teenage girls become better parents, more self-reliant, more socially productive, and to provide them with the "spiritual fortitude not to repeat past mistakes."

In 1998, Solid Rock approached the city about the Darlene Bishop Home and inquired as to whether the facility could be built under the 1985 permit. In a memorandum dated August 7, 1998, the city's law director informed the city's zoning enforcement officer that "[t]he conditional use permit granted in 1985 [did] not 'extend' to anything other than what was applied for and approved, to wit: a church." Based upon the foregoing memorandum, the zoning enforcement officer informed Solid Rock that additional zoning would be necessary. Solid Rock's subsequent attempts to have the property rezoned did not prove fruitful, and on

December 10, 1998, Solid Rock applied for a building and zoning permit and a site review for the proposed facility. Both applications were denied on January 7, 1999 by the zoning enforcement officer on the ground that the proper zoning for the proposed facility was not in place.

Solid Rock appealed the zoning enforcement officer's decision to the board. Following a public hearing on February 10, 1999, the board denied Solid Rock's appeal on the ground that the zoning enforcement officer's interpretation of the zoning code was not erroneous. Solid Rock thereafter appealed the board's decision to the common pleas court (the "trial court") pursuant to R.C. Chapter 2506. By decision and judgment entry filed September 23, 1999, the trial court upheld the board's decision, finding that it was not "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." The trial court found that the restriction in the 1985 permit that there be no school erected on the premises "evince[d] the intent of the board to restrict Solid Rock's use of the property." The trial court further found that the board "was reasonable in interpreting the 1985 conditional use permit as prohibiting the land from being used for the proposed Darlene Bishop Home. Certainly, using the land as a group home is similar to, if not a more intense use than, using the land for a school." This appeal followed in which Solid Rock raises two assignments of error.

In its first assignment of error, Solid Rock argues that the trial court erred "in affirming the [board's decision] by not applying the [proper] standard of review" to the board's administrative decision. Solid Rock contends that the trial court "erroneously limited its review by applying the standard of review applicable to evidentiary matters, and by failing to consider its plenary authority to review legal determinations of the [board]."

█ R.C. Chapter 2506 provides for the appeal of an administrative decision to the common pleas court. In reviewing the administrative decision, the common pleas court must determine whether "the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." R.C. 2506.04; *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 29, 465 N.E.2d 848, 851–852. The decision of the administrative body is presumed to be valid, and the burden of showing its invalidity rests upon the contesting party. *4D Investments, Inc. v. Oxford* (Jan. 11, 1999), Butler App. No. CA98–04–082, unreported, at 3, 1999 WL 8357, citing *Consolidated Mgt., Inc. v. Cleveland* (1983), 6 Ohio St.3d 238, 6 OBR 307, 452 N.E.2d 1287.

█ In contrast, this court has a more limited function. An appellate court is required to affirm the common pleas court unless it finds, as a matter of law,

that the decision of the common pleas court is not supported by a preponderance of reliable, probative, and substantial evidence. *Kisil* at 34, 12 OBR at 29, 465 N.E.2d at 851–852. Included within the ambit of review by the appellate court is the question of whether the common pleas court abused its discretion. *Id.* at 34, 12 OBR at 30, 465 N.E.2d at 852, fn. 4.

Solid Rock correctly states that the language of R.C. 2506.04 is in the disjunctive. As a result, the trial court need not find that an administrative decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, *and* unsupported by the preponderance of the evidence before it may reverse it. Rather, the trial court need only find one of the foregoing elements before it may reverse an administrative decision. While the trial court's decision focused mainly on whether the board's decision was supported by the preponderance of the evidence, the trial court nevertheless found that the board's decision was neither unconstitutional, illegal, arbitrary, capricious, unreasonable, nor unsupported by the preponderance of the evidence. We therefore find that the trial court applied the proper standard of review in reviewing the board's decision. Solid Rock's first assignment of error is overruled.

In its second assignment of error, Solid Rock argues that the trial court erred "in affirming the [board's decision] by failing to find that the proper interpretation of the 1985 conditional use permit would allow the proposed church-sponsored facility." Solid Rock contends that a "zoning permit issued to a church that specifically excludes [only] one type of church-sponsored use necessarily allows other types of church-sponsored uses."

Zoning ordinances "deprive a property owner of uses of his land to which he would otherwise be entitled and, therefore, when interpretation is necessary, such enactments are normally construed in favor of the property owner." *Cash v. Brookshire United Methodist Church* (1988), 61 Ohio App.3d 576, 579, 573 N.E.2d 692, 695. "Statutes or ordinances which impose restrictions upon the use of private property will be strictly construed and their scope cannot be extended to include limitations not clearly prescribed. * * * Zoning ordinances have reference to the use of land rather than who owns the land." *Id.* at 579–580, 573 N.E.2d at 695.

The Monroe Zoning Code[3] provides in relevant part that "[c]onditional uses may be permitted if expressly authorized by the Board of Zoning Appeals after

---

3. When Solid Rock was granted its conditional use permit in 1985, Chapter 1171 of the zoning code was the applicable zoning ordinance regarding conditional uses. However, the zoning code was subsequently renumbered and Chapter 1171 was renumbered as Chapter 1264. The pertinent language of former Chapter 1171 and Chapter 1264 is identical. Although the zoning code (and Chapter 1264) was subsequently amended in December 1998,

public notice and hearing and subject to any additional limitations and restrictions deemed necessary by the Planning Commission." Section 1264.01 of the zoning code. Section 1264.04 of the zoning code, in turn, sets forth the minimum requirements to be imposed on conditional uses and provides that additional requirements may be imposed by the planning commission if deemed desirable. The provision provides that churches and other places of worship are permitted in "[a]ll districts, except where otherwise permitted."

Unlike the newly amended zoning code, the zoning code applicable in 1985 and 1998 did not define "church," "church use," or "church purpose." Although it was not clearly stated, the trial court's decision appears to suggest that a church is only a building used for worship. See *Cash* at 581, 573 N.E.2d at 695–696.

The Ohio Supreme Court has not considered what constitutes a church or a church use in the context of zoning laws; however, the courts of other states have done so. We find their analysis useful and persuasive.

As the court stated in *Unitarian Universalist Church v. Shorten* (1970), 63 Misc.2d 978, 314 N.Y.S.2d 66, "[t]he perimeter of protected religious activity is not easy to define. [I]t extends beyond prayer and sacrifice but not so far as the operation of a country club * * *. 'Religious use * * * is broadly extended to conduct with religious purpose' * * *. [T]he concept of what constitutes a church has charged [*sic*] from a place of worship alone, used once or twice a week, to a church used during the entire week, nights as well as days, for various parochial and community functions." *Id.* at 982, 314 N.Y.S.2d at 71. Based upon those principles, the court held that the operation of a day care center on church property was a religious activity within the meaning of a village zoning ordinance. The church was thus entitled to operate a day care center on its premises without obtaining a special use permit.

In *Bd. of Zoning Appeals v. Wheaton* (1948), 118 Ind.App. 38, 76 N.E.2d 597, the court stated that "[a] building may be erected for church purposes other than those connected with divine worship. The word 'church' applies not only to a building used for worship, but to any body of Christians holding and propagating a particular form of belief * * *; and any building intended to be used primarily for purposes connected with the faith of such religious organizations may be said to be used for church purposes." *Id.* at 46, 76 N.E.2d at 601.

A similar reasoning was the basis of the decision in *Community Synagogue v. Bates* (1956), 1 N.Y.2d 445, 154 N.Y.S.2d 15, 136 N.E.2d 488, in which the court reversed a village board of appeals denial of a synagogue's application for a

---

it is undisputed that former Chapter 1264 was the applicable zoning ordinance regarding conditional uses at the time Solid Rock applied for a building and zoning permit and a site review. Former Chapter 1264 thus governs the case at bar.

change of use permit. The avowed aim of the synagogue was to establish on a twenty-four-acre tract containing a single-family dwelling a permanent place for religious worship, religious teaching and training, fellowship, guidance of indoor and outdoor activities for youth, and community work. In connection with the synagogue, there was to be a Sunday school, a men's club, a women's social group, and youth activities.

The court first observed that a church "is more than merely an edifice affording people the opportunity to worship God. Strictly religious uses and activities are more than prayer and sacrifice and all churches recognize that the area of their responsibility is broader than leading the congregation in prayer." *Id.* at 453, 154 N.Y.S.2d 15, 136 N.E.2d at 493. The court then pointed out that "[c]hurches have always developed social groups for adults and youth where the fellowship of the congregation is strengthened with the result that the parent church is strengthened." *Id.* The court reasoned that it was "a religious activity for the church to provide a place for these social groups to meet, since the church by doing so is developing into a stronger and closer knit religious unit. To limit a church to being merely a house of prayer and sacrifice would, in a large degree, be depriving the church of the opportunity of enlarging, perpetuating and strengthening itself and the congregation." *Id.*

The court recognized, however, that "the religious aim of strengthening the congregation through fellowship may not be permitted to be perverted into a justification for establishing a place of entertainment, such as a country club." *Id.* The court stated that "the facts clearly show[ed] that there [was] no such attempt here and each case ultimately rests upon its own facts." *Id.*

In *Corp. of Presiding Bishop v. Ashton* (1968), 92 Idaho 571, 448 P.2d 185, the term "church," as used in a city zoning ordinance, was held to include a lighted recreational complex with two softball fields built by a church on the grounds of its church building. Observing that "a church is something more than merely a building in which the actual religious services are held," the court stated that "[w]here use for church purpose is allowed in a zone, uses customarily incidental or accessory to church uses may not be excluded or unduly restricted. But such incidental uses must be reasonably closely related, both in substance and in space, to the main church purpose." *Id.* at 574, 448 P.2d at 188.

Emphasizing uncontradicted testimony that the church conducted recreational activities as an official part of its worship program, the court concluded that "the activities conducted on th[e] field [were] an integral part of the Church program and [were] sufficiently connected with the church itself that the use of this property for recreation purposes [was] permissible." *Id.* at 575, 448 P.2d at 189. Although recognizing that "a church [could not] enjoy completely unfettered use of its property just because the activities conducted thereon [bore] some relation

to a church purpose," the court pointed out that the question was largely one of degree. *Id.*

Finally, in *Slevin v. Long Island Jewish Med. Ctr.* (1971), 66 Misc.2d 312, 319 N.Y.S.2d 937, a center to address the drug problems of young people, conducted by arrangement with a hospital on the third floor of a church's parish house, was held to be a "religious use" within the meaning of a town zoning ordinance. The drug center program was designed to reach non-addicted youngsters in early stages of experimentation with marijuana and so-called "soft" drugs. Addicts, users of "hard" drugs, and prolonged users were to be excluded. There was no residential facility, and no medications or drugs for detoxification, withdrawal, or maintenance were to be provided. The purpose was to help the troubled drug abusers find their way early while still functioning acceptably at home and in society. The church minister was to be in daily contact with the drug center staff and the program participants. Activities were to include organizational meetings, work therapy, schooling, seminars, reality confrontation groups, drug education, and both individual and group counseling of educational, vocational, individual, and family matters.

The *Slevin* court defined "religious use" for zoning purposes as "broadly extended to conduct with a religious purpose." *Id.* at 316, 319 N.Y.S.2d at 943. It then went on to state:

"In the view of the Court, the challenges of drug to the human mind and spirit can be fairly met by the moving thrust of religious institutions. Indeed, the essential moral alienation of drug abuse seems most directly a religious problem. There is implicit in drug abuse a breakdown of spiritual and moral value. The accord of the soul involves in some material part the reaching of an understanding of one with his world. People must relate not only to each other, and must cope not only with the personal and material problems which confront them, but they must also deal with the forces of life, both seen and sensed, which press on their being. Religious, philosophical, and ethical insight are major disciplines in forging the life term adjustments. * * *

"[A]n affidavit submitted in support of the church's motion, declares that the drug center program is 'a specific effort to be obedient to Christ's command to heal.' [The rector of the church] states in his supporting affidavit that, 'Few things are more critical to the brotherhood of man and the religious activity of a church than assisting, in every way possible, to bring community youngsters to maturity as healthy, responsible, contributing members of the community.'" *Id.* at 317, 319 N.Y.S.2d at 944–945.

The court then held that "the drug center [was] a religious use of the church property and a valid extension of the religious institution for zoning purposes." *Id.* at 318, 319 N.Y.S.2d at 946.

The foregoing cases clearly show that a church is more than a mere building used solely for worship. Religious use has been defined to mean conduct with a religious purpose. In turn, any building used primarily for purposes connected with the faith of the congregation or to propagate such faith has been deemed used for church purposes. We agree that a church cannot enjoy completely unfettered use of its property just because the activities conducted on the property bear some relation to a church purpose. To fit within the definition of a church or church use, the activities or the use to which the property is put must be reasonably closely related, in substance and in space, to the church's purpose. The activity or use must be intended to promote the purposes for which the church is instituted, the most, but not sole, prominent purpose of which is the public worship of God. See *Bruce v. Cent. Methodist Episcopal Church* (1907), 147 Mich. 230, 110 N.W. 951.

In the case at bar, the board argues that the 1985 permit clearly does not extend to anything other than what was applied for and approved, to wit, a church building. We disagree.

We have already found that a church is more than a building used for worship. In 1985, Solid Rock applied for a conditional use permit. The board's minutes of its 1985 hearing state:

"Upon finding that they would be restricted in the use of their additional property, Mr. Lawrence asked *to expand the area of the conditional use, to allow for parking and future expansion of their church facility*. It was again pointed out that construction of a school on the property would require a rezoning, and Mr. Bishop stated that this way [*sic* ] not in their plans. *It was suggested that a conditional use for all but 100 feet of frontage* on the north and south of the property *would be adequate for their needs.*" (Emphasis added.)

Thereafter, the board granted Solid Rock a conditional use permit to "allow construction of a church" subject to four specific conditions. Of importance to the case at bar is the fourth condition, which specifically states that "[s]chools are not permitted in an I–G General Industry zone, under Section 1171.04 of the Monroe Zoning Code." Section 1171.04 (and its successor, Section 1264.04) clearly provided that schools and community center buildings were permitted only in A–1 Districts and all R Districts. Yet, the 1985 permit only forbade schools on the property.

The foregoing comes under the general reasoning that "the legislative expression of one item manifests an intention to exclude all other items from the scope of the [provision]. Expressio unius est exclusio alterius. The expression of one is the exclusion of all others." *SCA Serv. Of Ohio v. Ream* (Aug. 19, 1985), Stark App. No. 6599, unreported, 1985 WL 6480. By specifically and exclusively forbidding schools on Solid Rock's property, we find that the board manifested its

intention (albeit implicitly) to allow other structures on the property. If the board deemed the exclusion of all structures other than the church building so critical to its approval of the 1985 permit, it should have inserted such exclusion, and not just the exclusion of schools, into the permit. This is especially true in light of Solid Rock's 1985 request (which was granted) to "expand the area of the conditional use [to sixty acres] to allow for parking and future expansion of [its] church facility."

Indeed, while the board argues that the 1985 permit was solely for the construction of a church building, it is undisputed that following the 1985 permit, Solid Rock built a recreation center on the premises. While the record is devoid of any building permit or any conditional use request, it appears that the city's then zoning enforcement officer determined that the center fit within the definition of a church under the 1985 permit. Thus, regardless of whether the recreation center was applied for and/or approved, it is now part of Solid Rock's use of its property even though the 1985 permit neither explicitly allowed nor disallowed it.

The Darlene Bishop Home program is designed to provide unwed pregnant teenage girls with housing, prenatal care, life skills training, and a spiritual education. The latter would include daily chapel services and spiritual education classes. Solid Rock's articles of incorporation provide that "[t]he purpose or purposes * * * [of] this non-profit corporation is * * * to conduct and furnish christian, evangelistic and missionary work without discrimination." During the 1999 hearing before the board, Darlene Bishop, a pastor for Solid Rock, testified that "the mother's home ha[d] always been a part of [her] vision for the church" and that like the family center, "[t]he mother's home [would] be connected to church as an extension." Ronald Carter, Solid Rock's financial administrator, in turn testified that the Darlene Bishop Home was a missionary outreach of the church.

 It is clear that the Darlene Bishop Home program would be run and conducted by Solid Rock. Monroe Zoning Code does not define "church," "church use," or "church purpose." Nor does it provide that those concepts are to be delimited by any specific objective criteria. Thus, insofar as the zoning code provided no confining definition, the board's decision was based not on an application of express law but on a subjective understanding of the correct parameters of religious practice and expression.

Zoning ordinances "deprive a property owner of uses of his land * * * and therefore, when interpretation is necessary, such enactments are normally construed in favor of the property owner." *Cash*, 61 Ohio App.3d at 579, 573 N.E.2d 692. "In determining the permitted use of property under a zoning classification in which terms and language therein are not otherwise defined, the common and

ordinary meaning of these terms and language must be considered, liberally construing the terms and language in favor of the permitted use so as not to extend the restrictions to any limitation of use not therein clearly prescribed." *Cicerella, Inc. v. Jerusalem Twp. Bd. of Zoning Appeals* (1978), 59 Ohio App.2d 31, 35, 13 O.O.3d 99, 101–102, 392 N.E.2d 574, 577.

In the absence of a definition of "church," "church use," or "church purpose," and in light of all of the foregoing, including the limiting principles set forth in *Cash* and *Cicerella,* we find that the proposed Darlene Bishop Home is an integral part of Solid Rock's Christian and missionary purposes and is reasonably closely related to Solid Rock that the use of Solid Rock's property for the proposed facility is permissible under the 1985 permit. We therefore find that the trial court abused its discretion by misapplying the law and finding that the 1985 permit disallowed Solid Rock's proposed Darlene Bishop Home. We point out, however, that our holding is narrow and confined to the specific facts of this case. Solid Rock's second assignment of error is well-taken and sustained.

*Judgment reversed.*

POWELL, P.J., and VALEN, J., concur.