SYRIANOUDIS, d.b.a. Redemption House, Appellant,

v.

ZONING BOARD OF APPEALS OF ELLSWORTH TOWNSHIP, Ohio, Appellee.

[Cite as *Syrianoudis v. Ellsworth Twp. Zoning Bd. of Appeals,* 185 Ohio App.3d 204, 2009-Ohio-6247.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 08 MA 191.

Decided Nov. 20, 2009.

Betras, Maruca, Kopp & Harshman, L.L.C., and David Betras, for appellant.

Mark Finamore; and Atway & Cochran, L.L.C., and Scott Cochran, for appellee.

———

DeGenaro, Judge.

{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the briefs of the parties and appellee-intervenors, and their oral arguments before this court. Appellant, George Syrianoudis, d.b.a. Redemption House, appeals the August 12, 2008 decision of the Mahoning County Court of Common Pleas, which affirmed the decision of the Ellsworth Township Zoning Board of Appeals ("ZBA") denying appellant's application for a zoning permit and certificate of occupancy.

{¶ 2} Syrianoudis argues that the decision of the trial court was not supported by a preponderance of reliable, probative, and substantial evidence as a matter of law. Specifically, Syrianoudis argues that the trial court erred in holding that multiple residents living in a group-home environment did not qualify as a "family" for purposes of the Ellsworth Township zoning ordinance. However, a board of zoning appeals cannot consider whether the proposed use qualifies as a single family when the applicant has failed to present any evidence that the residents function as a "single housekeeping unit" as defined by the ordinance. The trial court did not err as a matter of law by affirming the decision of the ZBA. Accordingly, the decision of the trial court is affirmed.

## Facts and Procedural History

{¶ 3} George Syrianoudis operates the for-profit corporation Redemption, Inc. He started the Redemption House at a dwelling located in an R–1 residentially zoned district within Ellsworth Township. On June 8, 2006, Syrianoudis submitted an application for a zoning permit and a certificate of occupancy to the office of the zoning inspector for Ellsworth Township. Syrianoudis submitted the application as part of his preparations for remodeling the basement of the Redemption House to partition four separate rooms: a laundry room, utility and storage room, classroom, and office. Syrianoudis's application indicated that the house would be used for a group home.

{¶ 4} Legal counsel for the township responded to Syrianoudis's application on June 29, 2006, with further inquiry into the nature and function of the group home. Subsequent to Syrianoudis's reply, the Ellsworth office of the zoning inspector issued a denial of the application on October 2, 2006, noting that "a group home for up to ten adjudicated juveniles is not a permitted use in a residential R–1 district, Section VI, Ellsworth Township Zoning Resolution." Syrianoudis appealed the decision to the ZBA on October 10, 2006.

{¶ 5} On November 30, 2006, the ZBA held a hearing, at which Syrianoudis and Zoning Inspector Dudek testified. Syrianoudis testified that the Redemption House is run by the for-profit corporation Redemption, Inc., which is licensed as a group home with the Ohio Department of Job and Family Services, and that neither he nor anyone at Redemption, Inc., is licensed as a foster parent for any of the juveniles. Syrianoudis further testified that the purpose of the Redemption House is to "rehabilitate our residents so that they can successfully return to their families and communities. We will offer a wide range of services to accomplish this purpose including on-site individual, group, and family counseling, as well as an on-site internet-based school." Syrianoudis stated repeatedly during the hearing that the children would live together as a "single family unit," but did not elaborate. He otherwise provided descriptions of upstanding public figures who had lived in group homes, in order to stress their benefit to society. Syrianoudis testified that the children are to stay at the Redemption House for an undetermined length of time, "depend[ing] on how well they do," and that changes in a child's placement would be determined by the children's services agency. When asked whether he or his corporation would have any type of legal custody over the juveniles, Syrianoudis answered in the affirmative but did not explain what the legal relationship would be and between whom. Syrianoudis testified that the Redemption House structure is "designed as a single family unit."

{¶ 6} Inspector Dudek provided a statement that the absence of any adult permanently residing in the house with the juveniles, the rotating presence of group-home workers, as well as the substantial and highly individualized needs of the residents, indicated that the home was operating as multiple housekeeping units; thus the residents were not living as a single housekeeping unit. In addition to her statement, Inspector Dudek submitted documentary evidence to the ZBA, including a pamphlet advertising the Redemption House's services.

{¶ 7} The pamphlet indicates that the Redemption House is a log cabin on a 2.5–acre lot. It lists "Populations Served" as males between the ages of 13 and 18 years old with emotional, behavioral, or family issues. The "Services Offered" include "Case Management; Diagnostic Assessment; Family, Group, and Individual Counseling; Group Home; Psychiatric Services; Computer Based, State

Regulated, Onsite School through ECOT; Tutoring by Licensed SBH/LD Teacher; Support Groups; Respite Services; Parent Support; Vocational Services; Violence Interruption/Prevention." The pamphlet further lists the ways in which it will improve the physical, intellectual, emotional, and spiritual well-being of the population served.

{¶ 8} On December 27, 2006, the ZBA issued findings of fact and a decision, affirming the decision of the zoning inspector. The ZBA noted that the dwelling's floor plan now includes "a classroom and office to be used as a business for profit" and that the owner is using the dwelling as a business for profit, which "could only be permitted as an accessory use home occupation." The ZBA further noted that the "use and activities" of the staff and the residents do not constitute a single housekeeping unit: "[L]iving as a single housekeeping unit necessarily implies and requires some degree or continuity of personal relationships, interaction and cooperation of supervisors, staff, employees and adjudicated juvenile residents. The highly transient occupancy of the premises by the adult supervisors, staff, employees and adjudicated juvenile residents; the varying severity of behavioral and emotional problems of the adjudicated juvenile residents; and their individualized treatment and educational needs does not constitute living as a single housekeeping unit as we interpret the meaning and intent of the zoning resolution."

{¶ 9} On January 17, 2007, Syrianoudis appealed the decision of the ZBA to the Mahoning County Court of Common Pleas. The trial court granted leave to intervene to certain resident neighbors of the Redemption House, Jane Buffone, William Johns, and Patricia Johns ("the intervenors"). Syrianoudis filed a transcript of the ZBA hearing on August 30, 2007, and the trial court had all parties brief the issues in lieu of holding a merits hearing.

{¶ 10} On August 12, 2008, the trial court issued a judgment entry, holding that the decision of the ZBA was "not unconstitutional, illegal, arbitrary, capricious, unreasonable or unsupported by the preponderance of substantial, reliable and probative evidence on the whole record." The trial court did not address the finding of the ZBA that Syrianoudis was using the structure as a business for profit. Rather than holding whether the Redemption House constituted a residential versus business use, the trial court decided the case on the narrower issue of whether the Redemption House constituted a single family dwelling. The trial court decided that the residents were not integrated enough "to constitute a single family within the ordinary and usual understanding as to the functions for which single families exist." The trial court further found that the children were placed at the home under separate contracts with various agencies, were transients because placements were "six (6) months to one (1) year and perhaps more," that the dwelling was significantly remodeled to be a group home,

and that the "rules of conduct for the children in the home will not be family house rules, as that is ordinarily and usually understood in referring to single family homes, but instead will be guided by a book which is mandated by the Ohio Department of Jobs and Family Services." From these findings, the trial court concluded that the group home was not a permitted use for a Residential R–1 District per the Ellsworth Township zoning ordinance, and affirmed the decision of the ZBA.

{¶ 11} The trial court issued its August 12, 2008 decision to the parties on September 16, 2008, and Syrianoudis filed a notice of appeal on September 23, 2008. This court granted leave to appellees-intervenors to file a brief. The matter has been briefed by Syrianoudis, the ZBA, and the intervenors.

### Appellate Review of Administrative Appeals

{¶ 12} In his sole assignment of error, Syrianoudis argues:

{¶ 13} "The Trial Court erred in affirming the decision of the Board and denying Redemption House's Application for Zoning Permit and Certificate of Occupancy."

{¶ 14} Syrianoudis asserts that a group home constitutes a single housekeeping unit and thus a family, pursuant to the language of the ordinance. Syrianoudis argues that the trial court did not strictly construe the language of the ordinance against the ZBA, in contravention of *Saunders v. Clark Cty. Zoning Dept.* (1981), 66 Ohio St.2d 259, 20 O.O.3d 244, 421 N.E.2d 152; and *Fliotsos v. Youngstown* (Jan. 5, 1983), 7th Dist. No. 81–CA–123, 1983 WL 6727. The ZBA and the intervenors counter that the trial court correctly construed the language of the ordinance: the group home should not be considered a single-family dwelling unit because no one caretaker will reside full-time with the juveniles. The ZBA and the intervenors contend that the absence of a resident parent, foster parent, or guardian for the children factually distinguishes the case at hand from *Saunders* and *Fliotsos*.

{¶ 15} A trial court reviews the decision of the ZBA to determine whether the decision was "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." R.C. 2506.04. The administrative decision is presumed to be valid, and the burden of proving its invalidity rests upon the contesting party. *Solid Rock Ministries Internatl. v. Monroe Bd. of Zoning Appeals* (2000), 138 Ohio App.3d 46, 50, 740 N.E.2d 320.

{¶ 16} Pursuant to R.C. 2506.04, an appellate court's review of an administrative appeal is even more limited in scope. *Henley v. Youngstown Bd. of Zoning Appeals* (2000), 90 Ohio St.3d 142, 147, 735 N.E.2d 433. The appellate

court is only to review the decision of the trial court on questions of law, and is not to weigh the evidence. Id. " 'It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so.' " Id., quoting *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264. Thus, absent an error as a matter of law, this court must not disturb the judgment of the trial court.

### Ordinance Provisions at Issue

{¶ 17} The parties do not dispute any of the facts involved in this case and disagree only as to whether the facts qualify the group home as a permitted use in a Residential R–1 District, pursuant to the language of the ordinance. The applicable sections of the ordinance state as follows:

{¶ 18} "Section II. Definitions

{¶ 19} " * * *

{¶ 20} "Dwelling, One Family: A detached building designed for or occupied exclusively by one family.

{¶ 21} " * * *

{¶ 22} "Family: One (1) or more persons occupying a dwelling unit and living as a single housekeeping unit.

{¶ 23} " * * *

{¶ 24} "Section VI. Residential R–1 Districts

{¶ 25} "A. Permitted Buildings, Structures, and uses in Residential R–1 Districts:

{¶ 26} "(a) A After obtaining a valid zoning certificate in accordance with the provisions of these regulations, the following uses are permitted.

{¶ 27} "1. One (1) single family dwelling * * *."

{¶ 28} The ordinance divides Ellsworth Township into agricultural, residential, business, industrial, water reservoir, and planned unit development districts. The ordinance provides for four different types of residential districts, including R–1 single-family residential and R–3 multiple-family residential. The ordinance provides special off-street parking regulations for things such as "Private Clubs, Fraternities, Boarding and Lodging Houses," and "Sanitariums, Convalescent

Homes and Children's Homes," but does not provide a definition or any further reference for those terms.

## Single Housekeeping Unit Analysis

{¶ 29} In various cases where the term "single housekeeping unit" is at issue, the question whether unrelated people being provided a room, meals, and services from a licensed group or foster home constitutes a single housekeeping unit is decided based on the unique facts of each case. However, courts have consistently focused on two rationales in order to find favorably for the applicant: (1) a unifying resident-guardian relationship or (2) a unifying communal-living relationship. Neither rationale applies here.

{¶ 30} The first rationale is that a person residing in the house is asserting his right to care for his natural or foster family in the way he sees fit. See *Saunders*, 66 Ohio St.2d 259, 20 O.O.3d 244, 421 N.E.2d 152 (holding that a foster home for delinquent juveniles constituted a single housekeeping unit for the purposes of the Clark County Zoning Resolution where the applicants were the licensed foster parents of the juveniles and all parties lived together in the applicants' residence); *Fliotsos*, 1983 WL 6727 (holding that an applicant raising five mentally retarded children in her home constituted a family for the purposes of the Youngstown zoning ordinance). This rationale does not apply in the present case because Syrianoudis is not asserting his or another resident guardian's right to care for their family regardless of the relationships between the family members. *Saunders* and *Fliotsos* are distinguishable because the protesting parties were asserting their rights as foster parents to maintain their household. As residential foster parents, the parties in *Saunders* and *Fliotsos* were the main unifying factors creating a single housekeeping unit, maintaining a household through their resident-guardian relationship with all of their residents. Despite the limited record in this case, the circumstances of the Redemption House appear not to have that same unifying factor; the record is devoid of any such evidence. Specifically, Syrianoudis testified that neither he nor any of the adults were licensed as foster parents. He merely stated there would be some type of legal custody over the juveniles but offered no further testimony.

{¶ 31} Turning to the second rationale, we must determine whether the residents of a house operate or maintain that house in any sort of communal fashion. See *Westerville v. Kuehnert* (1988), 50 Ohio App.3d 77, 80, 553 N.E.2d 1085; *Freedom Twp. Bd. of Zoning Appeals v. Portage Cty. Bd. of Mental Retardation & Dev. Disabilities* (1984), 16 Ohio App.3d 387, 390–391, 16 OBR 456, 476 N.E.2d 360; *Concerned Citizens of Timberchase v. Morris Constr. Co.* (Dec. 28, 1983), 1st Dist. Nos. C–830180, C–830261, and C–830302, 1983 WL 2394;

*Beres v. Hope Homes, Inc.* (1983), 6 Ohio App.3d 71, 73–74, 6 OBR 539, 453 N.E.2d 1119. See also 1990 Ohio Atty.Gen.Ops. No. 90–080.

{¶ 32} For example, in *Concerned Citizens of Timberchase*, the Morris Construction Company and Human Services Collaborative, Inc., sought to use a house in a single-family residential zone as a "family home" residential facility for six mentally retarded females. Like the ordinance in this case, the Hamilton County Zoning Ordinance defined "family" as "a single housekeeping unit." Id. at *4. The First District pointed to the many facts in the record before the Hamilton County Zoning Board that supported the conclusion that the residents would live as a single housekeeping unit, such as that "they will share in marketing, meal preparation and serving, cleaning, laundering, and other household chores" and that they will learn "how to adapt to intimate group living." Id. at *2.

{¶ 33} We cannot consider whether this second rationale applies here because the record does not contain any evidence that the residents of the Redemption House will maintain the household in a communal fashion. Instead of the juveniles living together to share the dwelling as a single housekeeping unit, the limited information in the record indicates that the juveniles are placed at the Redemption House on an individual basis, to receive individualized treatment. There was no evidence on the record that the residents would communally perform things like household decision-making, household tasks, or even the cooking or eating of communal meals. While there was a bold statement from Syrianoudis that this would be a "single dwelling unit," there is no evidence in the record to support the contention that the house is, in fact, a single dwelling unit with a single, communal kitchen and laundry facility. Instead, the evidence provided to the trial court and ZBA indicated that the children will be provided with room, board, and a variety of educational and mental-health services, which appears to make the day-to-day functioning of the dwelling no different than that of a boarding school, rehabilitation clinic, or institutional children's home. This record reflects that the use of the building is merely institutional and thus differentiates this case from *Saunders*, 66 Ohio St.2d 259, 20 O.O.3d 244, 421 N.E.2d 152, and the above-cited cases.

{¶ 34} Finally, testimony regarding successful adults who were raised in a group-home setting sheds no light on whether the children will be living at Redemption House in a communal fashion. Individuals living in a communal, not separate, fashion is what is contemplated by "single housekeeping unit" in the ordinance, rather than the trial court's definition of "single family within the ordinary and usual understanding as to the functions for which single families exist." Ultimately, Syrianoudis's merely stating that the children would be living as "a single housekeeping unit" does not make it so.

{¶ 35} The case at hand is distinguishable from the foster-parent scenario in *Saunders*. Based on this record, the trial court reasonably found that the residents of the Redemption House were not living as a single housekeeping unit. There is no adult authority residing at the Redemption House acting in loco parentis to a group of children. Further, there is no evidence that the children will participate in day-to-day communal activities, such as housekeeping and cooking, as a unit. The minimal evidence provided indicated that the use of the dwelling was for the provision of individualized transitional treatment services.

{¶ 36} With no evidence presented to support a finding that the juveniles in the group home would operate as a single housekeeping unit apart from Syrianoudis's iteration of the legal conclusion, we cannot disturb the trial court's finding that the preponderance of the evidence showed that the Redemption House did not qualify as an R–1 single family dwelling. Keeping in mind that our review of the trial court's decision is extremely limited in scope, and based on the record as presented, we find that the trial court's decision that the Redemption House was not a single housekeeping unit was not contrary to law. Syrianoudis's sole assignment of error is meritless. Accordingly, the judgment of the trial court is affirmed.

Judgment affirmed.

VUKOVICH, P.J., and WAITE, J., concur.