## In re ROUMANIAN WORKERS EDUCATIONAL ASS'N OF AMERICA.

## ROUMANIAN WORKERS EDUCATIONAL ASS'N OF AMERICA v. POPOVICH.

### No. 8332.

Circuit Court of Appeals, Sixth Circuit.

Jan. 15, 1940.

Thomas L. Poindexter and Isaac M. Smullin, both of Detroit, Mich. (Isaac M. Smullin, Fred G. Dewey, and Thos. L. Poindexter, all of Detroit, Mich., on the brief), for appellant.

Allan M. Thompson, of Detroit, Mich. (Leroy Payne and Allan M. Thompson, both of Detroit, on the brief), for appellee.

Before HICKS, SIMONS, and ARANT, Circuit Judges.

HICKS, Circuit Judge.

Appeal by Roumanian Workers Educational Association of America from an order entered on April 17, 1939, denying motions, to vacate its adjudication in bankruptcy, and to dismiss the bankruptcy

proceedings. An involuntary petition was filed against appellant on January 25, 1938. After an extended hearing appellant was adjudicated a bankrupt on November 30, 1938, and on January 30, 1939, the court filed its findings of fact and conclusions of law.

On March 10, 1939, appellant, represented by certain counsel, filed its motion to set aside the adjudication and dismiss the proceedings, upon various grounds. On March 27, 1939, appellant, represented by different counsel, filed a similar motion upon three additional grounds. On April 17, 1939, the court denied both motions. In its order it stated, that all of the grounds of the first motion, and all save one, of the second, had been decided adversely to the bankrupt in the order of adjudication. An examination of the court's findings of fact and conclusions of law above referred to convinces us that this is true.

■ There was no appeal from the order of adjudication. But the one matter raised by the motion on March 27, 1939, which had not been previously decided, could be raised after the expiration of the time for appealing, because it presented a question of jurisdiction, i. e., whether appellant was subject to involuntary bankruptcy at all.

■ The evidence introduced at the hearing before the District Court is not in the record and in determining the question of jurisdiction we are controlled by the facts found. The court found that appellant was organized as a non-profit corporation under Act No. 171, Michigan Public Acts of 1903, for the propagation of socialism among the Roumanian workers of the country; but non-profit corporations are not expressly excluded from the operation of Sec. 4, sub. b, of the Bankruptcy Act, 11 U.S.C.A. § 22, sub. b. The susceptibility of appellant to bankruptcy does not depend altogether upon its charter. In Re Supreme Lodge of the Masons Annuity, D.C., 286 F. 180, at page 184, it was said: "The true rule is that the charter is first to be looked to in classifying the corporation, but that the business really done, and which is to be administered in bankruptcy, may also be looked to either to explain or rebut the inferences from the charter powers."

In Re Kingston Realty Co., 2 Cir., 160 F. 445, at page 446, it was said that whether a corporation "can be adjudged a bankrupt depends upon what it actually does, not what it is empowered to do."

Appellant was created and began functioning in 1917 but the court found that in 1922 it, " * * * bought a printing plant and from that time it devoted itself to commercial activities and entered into commerce in an established field, viz: the operation of a job printing plant and in the printing and publishing business general in competition with other printing plants in the City of Detroit. Several years before the filing of the involuntary petition in bankruptcy, said alleged bankrupt, filed a Trade Name Certificate with the County Clerk for the County of Wayne, in which county it then, and at the time of the filing of the petition in bankruptcy herein was doing business, in which Trade Name Certificate it stated its intention, 'to own, conduct, or transact business in the City of Detroit, under the name of Anchor Printing Company.' Said trade name was continued to be used by it up to and including the date of the filing of the involuntary petition in bankruptcy. In addition to said job printing work, said alleged bankrupt, published a weekly newspaper in the Roumanian language, known as 'Desteptarea.' It likewise published, each year, a so-called year-book or Almanac, for which said year-book, said newspaper and for all its printing work, said alleged bankrupt made a charge. Said year-book and said newspaper contained advertisements for all of which a charge was made."

■ The court further found that at least 90% of appellant's activities were of a commercial and business nature, and decided that upon the facts appellant, on the date of the commission of the act of bankruptcy, and of the filing of the involuntary petition against it, was "a business and commercial corporation within the purview of the National Bankruptcy Act."

We find no reason to disagree with this conclusion [Schuster v. Ohio Farmers' Coop Milk Ass'n, 6 Cir., 61 F.2d 337] and the order appealed from is affirmed.