FOREST HILLS EARLY LEARNING CENTER, INC.; Academy Day Care, Inc.; Holloman Child Care Centers, Inc., Plaintiffs–Appellees,

v.

GRACE BAPTIST CHURCH; Berean Baptist Church; the Rock Church; Tabernacle Baptist Church, Defendants-Appellants,

Coalition for Religious Freedom; United States of America, Amicus Curiae,

and

Larry D. Jackson, Director, Department of Welfare and Institutions, Commonwealth of Virginia; Shenandoah Baptist Church; Robert L. Alderman, Pastor, Defendants.

FOREST HILLS EARLY LEARNING CENTER, INC.; Academy Day Care, Inc.; Holloman Child Care Centers, Inc., Plaintiffs–Appellees,

v.

Larry D. JACKSON, Director, Department of Welfare and Institutions, Commonwealth of Virginia, Defendant–Appellant,

and

Shenandoah Baptist Church; Robert L. Alderman, Pastor; Grace Baptist Church; Berean Baptist Church; the Rock Church; Tabernacle Baptist Church, Defendants.

FOREST HILLS EARLY LEARNING CENTER, INC.; Academy Day Care, Inc.; Holloman Child Care Centers, Inc., Plaintiffs–Appellees,

v.

SHENANDOAH BAPTIST CHURCH; Robert L. Alderman, Pastor, Defendants–Appellants,

and

Larry D. Jackson, Director, Department of Welfare and Institutions, Commonwealth of Virginia; Grace Baptist Church; Berean Baptist Church; the

Rock Church; Tabernacle Baptist Church, Defendants.

Nos. 87–3713, 87–3714, 87–3703.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 4, 1988.

Decided May 6, 1988.

Jesse Herbert Choper (Mary Sue Terry, Atty. Gen. of Va., Gail Starling Marshall, Deputy Atty. Gen., Guy W. Horsley, Sr. Asst. Atty. Gen., Peter R. Messitt, Asst. Atty. Gen., Anthony F. Troy, David G. Shuford, George A. Somerville, Mays & Valentine, Richmond, Va., David C. Gibbs, Jr., Charles E. Craze, Daniel Jon Loomis, Terry L. Hamilton, Gibbs & Craze Co., L.P.A., Cleveland, Ohio, Donald W. Huffman, Bird, Kinder & Huffman, Roanoke, Va., on brief), for appellants.

John Edward Heintz (Stephen A. Chernow, Stephanie E. Humbert, Popham, Haik, Schnobrich & Kaufman, Ltd., John Vanderstar, Covington & Burling, Washington, D.C., on brief), for appellees.

William Bradford Reynolds, Asst. Atty. Gen., Roger Clegg, Deputy Asst. Atty. Gen., David K. Flynn, Lisa J. Stark, Dept. of Justice, Washington, D.C., on brief, for amicus curiae U.S.

Kathryn A. Hazeem, on brief, for amicus curiae Coalition for Religious Freedom.

Before RUSSELL and HALL, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

This challenge to the constitutionality of Virginia's exemption of religiously affiliated child care centers from state licensing requirements has been before this court on several occasions. *See Forest Hills Early Learning Center v. Lukhard,* 728 F.2d 230 (4th Cir.1984); *Forest Hills Early Learning Center v. Lukhard,* 789 F.2d 295 (4th Cir.1986). Acting on the basis of our earlier instructions, the district court conscientiously reviewed the various requirements of the licensing statute and held that compliance with them would not impermissibly burden the churches' free exercise rights. Consequently, the court concluded that the statute exempting the churches from obtaining licenses and from complying with regulations governing child care centers violates the establishment clause of the first amendment. *Forest Hills Early Learning Center v. Lukhard,* 661 F.Supp. 300 (E.D.Va.1987). Because the Supreme Court's recent decision in *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos,* — U.S. ——, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987), requires an analysis different from that which we previously employed, we reverse the judgment of the district court and hold the challenged statute to be constitutional.

I

The background of this dispute has been set forth in detail in our earlier opinion in this case. *Forest Hills,* 728 F.2d at 233–37. A brief review will suffice for the present discussion.

The state of Virginia since 1948 has required all child care center operators to obtain a license, and to comply with certain basic standards. In 1976 the Department of Welfare promulgated new and substan-

tially broader and more stringent regulations, setting detailed mandatory standards concerning, among other areas, programs, space, health, nutrition, disciplinary practices, and parental participation. Spurred to examine their positions by this more intensive regulation and by news of related controversies in other states, some churches informed state authorities that their religious beliefs could not permit them to apply for or accept a state license to carry out a function they consider an integral part of their religious ministry. In response to these concerns, the Virginia legislature enacted Va. Code § 63.1–196.3, which exempts child care centers operated by religious institutions, at their option, from licensing and compliance with many regulations. Exempt centers must still meet basic health and safety standards.

The appellees are child care centers without religious affiliations. They allege that the exemption of religious centers from licensing requirements places secular centers at a competitive disadvantage, and that they have suffered actual injury as a result of this effect.

## II

The churches contend that the secular child care centers lack standing to challenge the constitutionality of the exemption because they have introduced no evidence, beyond assertions, that they have suffered actual economic injury as a result of the exemption of religious centers. The district court ruled that the secular centers had demonstrated sufficient injury to establish standing. 661 F.Supp. at 307–08.

The Supreme Court's decision last term in *Arkansas Writers' Project v. Ragland,* —— U.S. ——, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987), supports the secular centers' claim of standing. In that case a publisher whose magazine was subject to the general state sales tax brought suit challenging the constitutionality of a sales tax exemption granted to certain types of magazines. The Court held that the plaintiff did have standing to bring that challenge, pointing to "the numerous decisions of this Court in which we have considered claims that oth-

ers similarly situated were exempt from the operation of a state law adversely affecting the claimant." 107 S.Ct. at 1726. The facts and positions of the parties in the present case are closely analogous to those in *Arkansas Writers' Project,* and the same principle must govern.

## III

Our earlier analysis of the statutory exemption was guided by the three-prong test for establishment clause violations articulated in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). The Supreme Court's decision last term in *Amos* adheres to the *Lemon* test, but explains and clarifies it in ways which require us to revise our analysis.

At issue in *Amos* was a statute specifically exempting religious organizations from the ban on religious discrimination imposed on all other employers by Title VII of the Civil Rights Act of 1964. The plaintiff was a building engineer employed in a gymnasium run as a nonprofit facility open to the public by entities connected with the Mormon Church. He was fired when he failed to qualify as a member in good standing of that church. The district court held that the exemption violated the establishment clause.

On direct appeal, the Supreme Court reversed. The Court employed the *Lemon* test for distinguishing between permissible accommodations and unconstitutional establishments of religion: "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion, ... finally, the statute must not foster 'an excessive government entanglement with religion.'" *Lemon,* 403 U.S. at 612–13, 91 S.Ct. at 2111. The Court held that the exemption of religious employers from Title VII's mandate passed each of the elements of the *Lemon* test. In reaching its conclusion, it emphasized that "'[t]he limits of permissible state accommodation to religion are by no means co-extensive with the noninterference mandated by the Free Exercise Clause.'" *Amos,* 107 S.Ct. at 2867, *quoting Walz v. Tax*

*Comm'n,* 397 U.S. 664, 673, 90 S.Ct. 1409, 1413, 25 L.Ed.2d 697 (1970).

The Court held it a permissible and sufficient legislative purpose "to alleviate significant governmental interference with the ability of religious organizations to define and carry out their religious missions." *Amos,* 107 S.Ct. at 2868. The government interference to be avoided includes both positive statutory mandates to which a religious group would have to conform its practices, and the "significant burden on a religious organization" caused by forcing it to defend its beliefs and practices in extended free exercise litigation before "a judge [who may] not understand its religious tenets and sense of mission." *Amos,* 107 S.Ct. at 2868.

The potential for just the sorts of burdens the Court is concerned with is very clear in the present case. Absent the exemption, some church leaders would immediately be forced to violate their convictions against submitting aspects of their ministries to state licensing, or face legal action by the state. This would be an unseemly clash of church and state which the legislature might well wish to avoid. Our earlier opinion shifted to the churches the initial burden of producing evidence "to establish the extent, if any, of their free exercise rights in the exempted activities." *See Forest Hills,* 728 F.2d at 246. As a result, they have already been put to the difficult and intrusive burden of attempting to persuade a secular court of the sincerity and centrality of the beliefs they consider threatened by government licensing.

■ The interference that the Supreme Court sought to avoid is apparent in an approach which permitted the district court to declare that "while the [churches] may characterize this activity as a part of their ministries, the Court is not bound to accept this characterization," and to conclude that "operation of child care centers by these sectarian institutions is a secular, and not religious, activity." *Forest Hills,* 661 F.Supp. at 309. The district court, noting

that child care centers in general are relatively recent phenomena, suggested that "sectarian groups, in establishing day care centers, were responding to secular economic need rather than expanding the scope of their ministries." 661 F.Supp. at 309. But religious groups have throughout history reshaped their ministries to respond to changed circumstances. *Amos* clarifies that it is a legitimate legislative purpose to avoid interference with the execution of religious missions in a nonprofit area in which a church operates, without reference to the role played by churches in the past.*

■ Addressing the requirement that a law must have a "principal or primary effect ... that neither advances nor inhibits religion," *Lemon,* 403 U.S. at 612, 91 S.Ct. at 2111, the Court distinguished laws such as those invalidated in *Lemon* which positively aid, endorse, and advance religion, from laws which, by adopting a hands-off policy, leave the way open for churches to advance their own teachings. "A law is not unconstitutional simply because it *allows* churches to advance religion, which is their very purpose. For a law to have forbidden 'effects' under *Lemon,* it must be fair to say that the *government itself* has advanced religion through its own activities and influence." *Amos,* 107 S.Ct. at 2868–69. Virginia, in exempting religious child care centers from its licensing requirement, cannot be said to be "advanc[ing] religion through its own activities and influence." On the contrary, we believe that "the objective observer should perceive [this exemption] as an accommodation of the exercise of religion rather than as a government endorsement of religion." *Amos,* 107 S.Ct. at 2875 (O'Connor, J., concurring). The fact that this accommodation may make the churches' task marginally easier than it would be were no exemption given, the Supreme Court has indicated, is of no moment. Nor does a regulatory statute's singular exemption of religious groups render its purpose suspect: "Where, as here, government acts with the

---

\* The Supreme Court has not decided whether the state may as readily exempt for-profit operations of religious groups from otherwise applicable regulations. *Amos,* 107 S.Ct. at 2873 (Blackmun, J., concurring) and 2875 (O'Connor, J., concurring).

proper purpose of lifting a regulation that burdens the exercise of religion, we see no need to require that the exemption comes packaged with benefits to secular entities." *Amos*, 107 S.Ct. at 2869.

Finally, the Court held that exemptions such as those challenged in *Amos* and in the present case actually lessen the risk of entanglement between church and state. The burdensome issue-by-issue free exercise litigation that would be necessary absent a general exemption "results in considerable ongoing government entanglement in religious affairs." *Amos*, 107 S.Ct. at 2872 (Brennan, J., concurring). This would both chill and interfere with religious groups, enmeshing judges in intrusive and sometimes futile attempts to understand the contours, sincerity, and centrality of the religious beliefs of others. *Amos*, 107 S.Ct. at 2870 (opinion of the Court) and 2872 (Brennan, J., concurring).

In sum, applying to these nonprofit facilities the *Lemon* test as now explained by *Amos*, we do not discern any distinctions that would justify a result in this case different from that reached in *Amos*. Indeed, if an exemption is permissible in the context of employment practices in a gymnasium, one can only be more solidly justified where it acts to prevent state interference with church programs that provide education and care for children.

## IV

Our decision on the merits renders moot the appeal of Shenandoah Baptist Church from an order dismissing it from the case.

Since the appellees are no longer the prevailing party within the meaning of the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, we vacate the district court's award of attorney's fees.

The judgment of the district court declaring Va. Code § 63.1–196.3 unconstitutional is reversed, and the injunction it issued is dissolved.