# CIRCUIT COURT OF KING GEORGE COUNTY

Harvest Christian Center

v.

Zoning Appeals Board
of King George County

May 25, 2001

BY JUDGE JAMES W. HALEY, JR.

The issue here for resolution is whether the operation of a day care center within a church is permitted in a zoning district authorizing churches but not day care centers.

The parties have stipulated the evidence and the administrative record. See Code § 15.2-2314.

In December 1990, the King George County Board of Supervisors ("Supervisors") granted a Special Exception permit to the King George Church of God to operate a church on land then and now zoned R-1, such a use being permitted by special exception under Section 2.6 of the King George County Zoning Ordinance. In November 1994, the Supervisors authorized the use of a mobile home on the property as a *classroom* and in June 1996 the county issued a Certificate of Occupancy permit that authorized the building to be used as an educational building. On November 3, 1999, the Supervisors again granted a Special Exception to allow a new church building to be constructed on the property and authorized a two-year extension for continued use of the mobile classroom.

In the interim, the King George Church of God was renamed the Harvest Christian Center in May 1999 ("Harvest"). In November 1996, the Commonwealth of Virginia approved and licensed Harvest to operate a day care facility, and since January 1997, Harvest has continuously operated the Precious Gem Day facility ("Precious") on the property. Precious must comply with all basic health and safety standards.

On March 24, 2000, the land use administrator of King George County advised Harvest its operation of Precious was in violation of Section 2.6 of the Zoning Ordinance on the grounds that "a day care facility is not listed as a use permitted either by right or by special exception" in an R-1 district. His decision was appealed to the Board of Zoning Appeals pursuant to Code §§ 15.2-2311 and 15.2-2312. Prior to the hearing on the appeal, Harvest filed a request for rezoning to R-2, where day care centers are a use by right, which the supervisors denied on July 18, 2000.

A hearing on the appeal was held before the Board of Zoning Appeals ("BZA") on September 26, 2000. The following facts and quotations are taken from the minutes of that meeting:

> The pastor of Harvest is the head administrator of Precious and all teachers and employees are required to be active members of Harvest. Though Precious charges for its services, as a part of Harvest, it had been and remains accorded status as a non-profit organization. Any revenue in excess of salaries and expenses is given to Harvest.
>
> At present there are 37 families enrolled in Precious and according to its director "the purpose of this day-care facility was to provide a Christ-centered, safety conscious childcare environment to instill Biblical values and morals into the lives of the children whom they serve. . . ." The pastor of Harvest stated that "he sees the daycare program as a ministry of the church and sees decisions he makes about the daycare program as ministry decisions."
>
> There are eight day care facilities in King George County and four are operated by churches. The land use administrator admitted knowledge of two specific churches operating day care facilities but noted both operations "pre-dated the zoning ordinance."

The BZA upheld the land use administrator. Pursuant to Code § 15.2-2314, Harvest filed a petition for Writ of Certiorari thereby appealing the decision of the BZA and on November 9, 2000, that writ was granted. Further action by the administrator was enjoined pending resolution of the appeal.

"Church" is not defined in the King George County Zoning Ordinance. "Day care facility" is defined in Section 1.9.3 of the ordinance, and the services offered by Precious are partially subsumed within that definition.

Under the King George County Zoning Ordinance, day care facilities are permitted by right in Agricultural A-1, Agricultural A-2, Agricultural A-3, Residential R-2, Residential R-3, and Commercial C-1. Community Centers,

defined as buildings "used for the cultural, educational and/or recreational activities . . . not operated for profit," are, like churches, authorized by special exception in Residential R-1. Under Residential R-1, by right authorization is granted for "Accessory uses and structures incidental to permitted uses." Permitted accessory uses are defined in Section 3.8.1 as "Accessories which are customarily incidental to the main use . . . unless otherwise regulated or prohibited by this ordinance." Finally, Section 1.7.1 of the ordinance recites: "No building . . . shall be used . . . except in conformity with . . . the regulations specified for the district in which it is located."

Zoning laws should be given a fair and reasonable construction in light of the intent of the legislative authority adopting them, the natural import of the words employed in common usage, the setting where such words are used, and the general structure of the entire ordinance. *Lawrence Transfer & Storage Co. v. Board of Zoning Appeals*, 229 Va. 568, 331 S.E.2d 460 1985); *Hanover County v. Bertozzi*, 256 Va. 350, 504 S.E.2d 618 (1998); *Board of Zoning Appeals, ex rel. County of York v. 852, L.L.C.*, 257 Va. 485, 514 S.E.2d 767 (1999).

"The purpose or intent of the ordinance should be considered but the ordinance should not be extended by interpretation or construction beyond its intended purpose." *Donovan v. Board of Zoning Appeals*, 251 Va. 271, 274, 467 S.E.2d 808, 810 (1996), cited with approval in *Higgs v. Kirkbridge*, 258 Va. 567, 522 S.E.2d 861 (1999).

The determination of the Zoning Administrator is presumed to be correct. *Wolfe v. Board of Zoning Appeals*, 260 Va. 7, 19, 532 S.E.2d 621, 630 (2000); *Crestar Bank v. Martin*, 238 Va. 233, 236, 383 S.E.2d 714, 716 (1989).

> The decision of a board of zoning appeals is presumed to be correct on appeal to a circuit court; the appealing party bears the burden of showing that the Board applied erroneous principles of law or that its decision was plainly wrong and in violation of the purpose and intent of the Zoning Ordinance.

*Masterson v. Board of Zoning Appeals*, 233 Va. 37, 44, 353, S.E.2d 727, 732-33 (1987); see also, *Board of Zoning Appeals v. Bond*, 225 Va. 177, 179-80, 300 S.E.2d 781 (1983); *Alleghany Enterprises v. Covington*, 217 Va. 64, 67,

225 S.E.2d 383, 385 (1976); *Foster v. Giller*, 248 Va. 563, 566, 449 S.E.2d 802, 804-05 (1994).[1]

The argument of the BZA can be summarized succinctly: the Decision of the Zoning Administrator and the BZA is presumed correct; day care centers are not authorized in R-1 districts; day care centers are prohibited accessory uses; accordingly, the decision of the BZA is neither plainly wrong nor based upon erroneous principles of law. The argument Harvest presents is more subtle and even more succinct: a day care facility is part of a church. It is this argument that the court must address.

As noted above, "church" is not defined in the zoning ordinance. In *Forsberg v. Zehm*, 150 Va. 756, 764-5, 143 S.E.284, 290 (1928), a breach of contract case involving a church (by its trustees) and a provider of music, the court attempted a definition:

> The word "church" is used with varied significance, dependent upon the circumstances attending its use. It may refer only to the church building or house of worship; it may mean in a more consecrated way the great body of persons holding the Christian belief, or in a restricted sense confined to those adhering to one of the several denominations of the Christian faith, at large or in a definite territory; and it may mean the collective membership of persons constituting the congregation of a single permanent place of worship. . . . It is almost the universal custom in our churches to have attractive music in connection with religious services and devotional exercises, and to that end to arrange for and keep up a choir capable of rendering sacred music in a manner pleasing and satisfactory to a large and discriminating congregation.

In *Forest Hills Early Learning Center, Inc. v. Grace Baptist Church*, 846 F.2d 260 (4th Cir. 1988),[2] a secular day care provider maintained that a Virginia statutory exemption from licensing requirements for day care centers operated by churches was unconstitutional because of the prohibition

---

[1] Consistent administration application of a provision in a zoning ordinance is likewise a factor to be considered. *Look v. Board of Zoning Appeals of the City of Falls Church*, 244 Va. 107, 111, 418 S.E.2d 879, 881 (1992); *Rountree Corp. v. City of Richmond*, 188 Va.701, 712, 51 S.E.2d 256, 261 (1949). In the present case, however, the record does not reflect that the instant issue had ever before been addressed by the Zoning Administrator or the BZA.

[2] The procedural and adjudicative history of this cause can be found within the body of the opinion itself.

contained in the "Establishment" Clause of the First Amendment of the United States Constitution. The district court judge had found that "operation of child care centers by these sectarian institutions is a secular, and not religious, activity" and that "sectarian groups, in establishing day care centers, were responding to secular economic need rather than expanding the scope of their ministries." He found the Virginia statute unconstitutional on First Amendment grounds.

Judge John Butzner upheld the constitutionality of the Virginia statute and in response to the position of the district judge quoted above noted that "religious groups have throughout history reshaped their ministries to respond to changed circumstances." 846 F.2d at 263.

In *Protestant Episcopal Society of Va. v. Churchmen's Representatives*, 80 Va. 718 (1885), the validity of a bequest to a church solely for educational purposes was upheld. Again upholding a testamentary trust benefiting a church in *Maguire v. Loyd*, 193 Va. 138, 147, 67 S.E.2d 885, 890 (1951), *aff'd on rehearing*, 194 Va. 266, 72 S.E.2d 631 (1952), the court noted the income from the trust was to be used "for religious *and* benevolent use of the congregation." (Emphasis on the conjunctive supplied.)

Despite using language indicating the same as an accessory use, the court in *Richmond Heights v. Presbyterian Church*, 764 S.W.2d 647 (Mo. 1989), permitted the operation of a day-care center by a church located "in an area of the city zoned family residential only." The court also quoted from *Community Synagogue v. Bates*, 1 N.Y.2d 445, 453, 154 N.Y.S.2d 849, 136 N.E.2d 827 (1956), as follows: "A church is more than an edifice affording people the opportunity to worship God. Strictly religious uses and activities are more than prayer and sacrifice." In *Board of Zoning Appeals v. Wheaton*, 118 Ind. App. 38, 47, the Indiana court stated that:

> We are of the opinion that a convent or "sisters home" must be considered an integral part of the Roman Catholic church project, which is composed of four component parts, *viz.* church, priests' mansion, a "sisters home" and *school.*

Emphasis supplied.

There is no evidence in this cause but that Precious Gems is a non-profit day care facility controlled and operated by the pastor of Harvest and members of Harvest and offering care, instruction, and learning based upon Christian religious principles. The Board of Supervisors has already granted Harvest a permit for a mobile home "classroom." The day care center is not simply a baby-sitter; rather it is clear the facility is used for the instruction and

education of the children who attend, which this court finds as a fact. The day care facility is viewed by the pastor, by the employees, and presumably by those who have chosen for their children to attend, as in fact an extension of the ministry of Harvest. Harvest has "reshaped [its] ministry" to respond for the felt need in present times of such a religious-based facility when both parents or a single parent work. And Harvest is not alone. The record shows that one-half of all day care centers in King George County are operated by churches of various denominations. Churches of every denomination found in the Commonwealth have historically offered educational facilities for children and viewed that education as an extension of and integral to their respective ministries.

> [C]hurches or religious associations are recognized and treated . . . as bodies entitled under any form of government, to enjoy the benefits of property, which property, like that of all other citizens, whether individuals, associations of individuals, or corporations, should be protected and secured to them by law.

*Trustees v. Guthrie*, 82 Va. 125, 140-41, 10 S.E. 318, 325 (1889).

The court finds that Harvest has met the burden of proof required to overcome the presumptive correctness of the decision of the BZA.

In accordance with the foregoing, the injunction against the Zoning Administrator will be permanent.