**In re GRACE CHRISTIAN MINISTRIES, INC., Alleged Debtor.**

**Strassburger McKenna Gutnick and Potter, Movant,**

v.

**James M. Quinn, Edward and Sharon Kalansky, and Harold Marsh, Respondents.**

**Bankruptcy No. 02–30028–BM. Motion No. 02–6411M.**

United States Bankruptcy Court, W.D. Pennsylvania.

Dec. 13, 2002.

Joshua R. Lorenz, Jeannette, PA, for Respondents/Petitioning Creditors.

Mark J. Christman, Pittsburgh, PA, for Movant.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

The trustee appointed by the Court of Common Pleas of Allegheny County, Pennsylvania, to manage certain of the affairs of Grace Christian Ministries, Inc. (hereinafter "GCM") has brought a motion on GCM's behalf to dismiss the involuntary chapter 11 petition brought against GCM. He asserts that the petition must be dismissed because the requirements for bringing an involuntary petition found at §§ 303(a) and 303(b) of the Bankruptcy Code have not been satisfied in this instance.

Petitioning creditors insist that these requirements have been satisfied and oppose the motion to dismiss.

For reasons set forth in this memorandum opinion, we will grant the motion to dismiss the involuntary petition.

## —FACTS—

First Christian Church of Homestead, Pennsylvania, was incorporated pursuant to Pennsylvania law on April 19, 1905, as a non-profit entity. Its stated purpose was the worship of God in accordance with the faith, doctrines, principles, and usages of the Disciples of the Church of Christ. It operated out of a building it owned that is situated in Munhall, Pennsylvania.

Effective as of November 1, 1995, First Christian Church of Homestead amended its articles of incorporation to change its name to Grace Christian Ministries, Inc. Its registered office was relocated to real property it owned located at 612 Coal Road, West Mifflin, Pennsylvania.

James Quinn contracted with GCM on April 5, 1998, to construct a two-story building at 612 Coal Road to house a church and a day care center known as Noah's Ark Child Care Center. Individuals who use the day care center operated by GCM are charged and pay a fee for services provided. Construction of the day care center was completed by May 15, 1998. The remainder of the project was completed by July 15, 1998.

The original contract price for the project was $887,762.00. The final contract price was reduced to $788,571.00 after change orders and various adjustments. Payments Quinn received from GCM for work he performed in connection with the project totaled $519,520.00, leaving an unpaid principal balance in the amount of $269,051.00.

Edward and Sharon Kalansky loaned $300.00 to GCM on July 19, 1999. Harold and Edna Marsh loaned $2,000.00 to GCM on July 29, 1999. The loans were never repaid.

At some undetermined time prior to November of 2000, James Quinn signed an undated letter drafted by the then-pastor of GCM. Quinn acknowledged in the letter that GCM needed to raise $250,000.00 to qualify for a loan from a financial institution with which to pay its debts and stated that he "was more than willing to help by donating up to $250,000 to you and your group to bolster your end of the agreement".

GCM has not used the building located at 612 Coal Road as a place of worship since at least November of 2000. The day care center, however, continues to operate at that location.

The Court of Common Pleas of Allegheny County issued an order on November 20, 2000, appointing the law firm Strassburger, McKenna, Gutnick and Potter (hereinafter "SMGP") as trustee of a constructive trust "to oversee the operation and finances of Noah's Ark Child Care (Business) and shall be empowered to take all actions necessary to ensure the proper operation of said Business".

The same court issued another order on October 12, 2001. Among other things, the order continued the trusteeship of the day care center and expanded the previous order appointing SMGP to include jurisdiction over the real property located at 612 Coal Road.

An involuntary chapter 11 petition against GCM was filed on September 13, 2002. The petitioning creditors were James Quinn, Edward and Sharon Kalansky, and Harold Marsh.

SMGP brought a motion on behalf of GCM on October 1, 2002, to dismiss the involuntary petition. In support of the motion, SMGP asserted that GCM did not qualify as an involuntary debtor because it was not "a moneyed, business, or commercial corporation" for purposes of § 303(a) of the Bankruptcy Code. As additional support for the motion, SMGP asserted that the involuntary petition should be dismissed because it also did not comply with the requirements of § 303(b) of the Bankruptcy Code.

An evidentiary hearing on the motion to dismiss and the opposition thereto of the petitioning creditors was held on November 19, 2002, at which time both sides were given an opportunity to call witnesses and to offer evidence.

—DISCUSSION—

Section 303(a) of the Bankruptcy Code provides in part as follows:

(a) An involuntary case may be commenced only under chapter 7 or 11 of this title, and only against a person, except a ... corporation that is not a

moneyed, business, or commercial corporation, that may be a debtor under the chapter under which such case is commenced.

11 U.S.C. § 303(a).

■ Section 303(a) expressly provides that an involuntary chapter 7 or 11 petition may not be brought only against a corporation that is *not* "a moneyed, business, or commercial corporation". This phrase refers for-profit corporations. *In re Capitol Hill Healthcare Group*, 242 B.R. 199, 202 (Bankr.D.D.C.1999). A corporation, in other words, may *not* be an involuntary chapter 7 or 11 debtor if it is a not-for-profit corporation.

The legislative history of this provision indicates that "schools, churches, charitable organizations and foundations" are protected from involuntary bankruptcy by § 303(a). *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 321 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 33 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6277, 6278, 5787, 5819.

■ Movant asserts that this involuntary petition must be dismissed because § 303(a) is not satisfied—i.e., because GCM is a not-for-profit entity. Petitioning creditors respond that, despite its incorporation pursuant to Pennsylvania law as a not-for-profit entity, GCM is a *de facto* for-profit corporation due to certain activities in which it has engaged.

There is long-standing disagreement concerning the appropriate standard for determining whether a corporation qualifies as "moneyed, business, or commercial" for purposes of § 303(a) and hence is susceptible to involuntary bankruptcy. The United States Court of Appeals for the Third Circuit has not addressed or determined the appropriate standard.

Some courts have held that the nature and character of a corporation for the pur-

pose of determining whether it may be an involuntary debtor in bankruptcy depend only on the powers and characteristics imposed upon it by the law of the state of its incorporation. *E.g., Union Guarantee & Mortgage Co. v. Van Schaick (In re Union Guarantee and Mortgage Co.)*, 75 F.2d 984, 985 (2d Cir.1935), *cert. denied*, 296 U.S. 594, 56 S.Ct. 142, 80 L.Ed. 421 (1935); *Clemons v. Liberty Savings & Real Estate Corp.*, 61 F.2d 448, 450 (5th Cir.1932); *Gamble v. Daniel*, 39 F.2d 447, 450 (8th Cir.), *cert. denied*, 282 U.S. 848, 51 S.Ct. 27, 75 L.Ed. 752 (1930); and *In re National Mortgage Corporation*, 17 F.Supp. 54, 55 (D.N.J.1935).

Other courts have held that the classification of a corporation for the purpose of determining whether it may be an involuntary debtor in bankruptcy depends, in the first instance, on the law of the state of its incorporation. The character and the extent of activities in which it has actually engaged however, may also be considered. *E.g., Missco Homestead Association v. U.S.*, 185 F.2d 280, 282 (8th Cir.1950); *Hoile v. Unity Life Insurance Co.*, 136 F.2d 133, 136 (4th Cir.1943); *In re Roumanian Workers Educational Association of America*, 108 F.2d 782, 783 (6th Cir. 1940); *In re Supreme Lodge of the Masons Annuity*, 286 F. 180, 184 (N.D.Ga. 1923); and *In re International Underwriters, Inc.*, 157 F.Supp. 367, 368 (W.D.Mo. 1957).

These cases appear to retain their vitality under the Bankruptcy Code even though they are of relatively ancient vintage and were decided under the former Bankruptcy Act.

SMGP urges us to adopt the standard set forth in the first set of cases cited. Petitioning creditors urge us to adopt the standard se forth in the second set of cases cited. We need not decide which of these competing standards to apply here in de-

termining whether GCM is a "moneyed, business, or commercial corporation" for purposes of § 303(a). The outcome is the same in either case.

If we look to the law pursuant to which GCM was incorporated to determine its nature and characteristics for purposes of § 303(a), we must conclude that GCM is a *not*-for-profit corporation and therefore may not be an involuntary debtor in bankruptcy. The order of April 19, 1905, issued by the Court of Common Pleas of Allegheny County approved an application to form a non-profit corporation for the worship of God named First Christian Church of Homestead. The articles of amendment effective as of November 1, 1995, changed only the name of the corporation to Grace Christian Ministries. Its status as a not-for-profit entity was not changed in any way by the amendment.

The conclusion in this matter is the same if we apply the standard articulated in the second line of cases.

It was stipulated at the evidentiary hearing on the motion to dismiss that church services have not been conducted at 612 Coal Road since at least November of 2000. It was further stipulated that the only activity presently taking place at that location is the operation of the day care center.

In support of their opposition to the motion to dismiss the involuntary petition, petitioning creditors argue that: (1) debtor no longer functions as a church; it has no congregation; it has no pastor, elders, or deacons; it does not conduct worship services; it does not conduct any marriage, funeral, or baptism ceremonies; and it has no community outreach programs or ministries; and (2) the day care center is a for-profit business. It was stipulated at the evidentiary hearing that individuals who avail themselves of the day care center must pay for the services provided.

The considerations relied upon by petitioning creditors in the first of their arguments in our estimation are not relevant to the question whether GCM is a "moneyed, business, or commercial corporation". Assuming that they are true, they indicate at most that GCM is not an active corporation, not that it is a "moneyed, business, or commercial corporation". A corporation may be inactive and still not be a "moneyed, business, or commercial corporation".

Even if such considerations were relevant, we conclude in light of the record created at the evidentiary hearing that GCM is active, albeit perhaps minimally, as a church at its location in Munhall, Pennsylvania. The chairman of GCM's board of directors offered uncontroverted testimony that GCM still operates a youth outreach program at that location.

On November 22, 2002, three days *after* the evidentiary hearing on the motion to dismiss concluded and the record was closed, petitioning creditors filed with the court a document entitled "Supplemental Submission Of Evidence In Light Of Facts Obtained Following Evidentiary Hearing", with various exhibits attached thereto. The obvious intent of the "supplemental submission of evidence" was to rebut the uncontroverted testimony of the chairman of GCM's board of directors that GCM presently operates a youth outreach ministry at its Munhall location.

We decline to consider this so-called "supplemental evidence" because it was submitted *after* the record was closed and is not subject to cross-examination by GCM's trustee. Had petitioning creditors argued at the evidentiary hearing that they were unfairly surprised by the testimony of the chairman of GCM's board of directors and requested that the evidentiary hearing be resumed at a later time so

they might offer rebuttal testimony, which testimony would then be subject to cross-examination, we might have given consideration to their request. Because petitioning creditors neither claimed unfair surprise nor requested a continuance of the evidentiary hearing for that purpose, they will not be permitted to offer "supplemental evidence" after the record was closed to show that GCM is not presently conducting a youth outreach program at its Munhall location.

In addition, petitioning creditors could not in good faith aver that they were surprised by after-discovered evidence which could not have been discovered prior to the hearing. The evidence subsequently offered was there to be found. For reasons that we cannot articulate, petitioning creditors failed to find it even though it was located in public records.

As for the second argument put forth by petitioning creditors—i.e., that GCM is a business corporation because the day care center it operates is a for-profit venture—we find it unpersuasive.

■ In the first place, it is a *non sequitur* to conclude that a corporation is a "moneyed, business, or commercial corporation" merely because it charges and is paid a fee for its services. Were such a conclusion warranted, many corporations which unquestionably are not-for-profit would qualify as involuntary debtors in bankruptcy for purposes of § 303(a). Without something more, this does not make a corporation a "moneyed, business, or commercial corporation". Whether or not it so qualifies would, at the very least, depend on what it does with any surplus revenue.

A partner of SMGP testified that revenues the day care center collects are used in the first instance to pay such debts as employee salaries, the mortgage, a federal tax lien against the property, insurance, a loan to purchase a van used to transport children, and his fees as trustee. If there is any excess revenue after these debts are paid, it will be used to make restitution to congregation members who were swindled in an investment scheme orchestrated by GCM's former pastor, who presently is in prison.

If a pending sale of the day care center to a third party, who intends to operate it on a for-profit basis, is approved by the state court, the trustee anticipates that defrauded congregation members will receive eighty percent (or more) of the amounts of which they were swindled. Petitioning creditors, the trustee stated, would also receive a portion of the net sale proceeds if they so request in the state court proceeding and their request is approved by that court. Such uses of the revenues generated by the day care center in our estimation do not transform GCM from a not-for-profit corporation to a for-profit one. No "profit" as the term is used in ordinary parlance is realized from its operations.

We consequently conclude in light of all of the foregoing that GCM is *not* a "moneyed, business, or commercial corporation" for purposes of § 303(a) of the Bankruptcy Code and that it is *not* a candidate for involuntary bankruptcy.

GCM and the trustee further contend that the involuntary petition must be dismissed because the requirements of § 303(b) also have not been met in this instance. The involuntary petition, they assert, was brought by fewer than three entities having non-contingent claims which are not subject to bona fide dispute and which aggregate at least $11,625 more than the value of any lien against debtor's property securing their claims. According to SMGP, petitioning creditor Quinn voluntarily relinquished his claim against GCM

when he executed a letter at some time prior to November of 2000, wherein he donated to GCM up to $250,000 of the amount it owed him for constructing the building housing the church and day care center at 612 Coal Road.

We need not address this contention in light of the determination that the requirements of § 303(a) have not been met in this instance and that the involuntary petition against GCM must be dismissed. Were we to address it, however, we would determine that the requirements concerning the number of petitioning creditors and the aggregate amount of their claims are satisfied in this instance.

An appropriate order shall issue.

### ORDER OF COURT

**AND NOW,** at Pittsburgh this **13th** day of **December,** 2002, for reasons set forth in the foregoing Memorandum Opinion, it hereby is **ORDERED, ADJUDGED** and **DECREED** that the involuntary chapter 11 petition brought against Grace Christian Ministries, Inc. on September 13, 2002, by petitioning creditors James Quinn, Edward and Sharon Kalansky, and Harold Marsh be and is **DISMISSED.**

It is **SO ORDERED.**