NOAH'S ARK CHRISTIAN CHILD CARE CENTER, INC. and Strassburger McKenna Gutnick & Potter, Trustee

v.

## ZONING HEARING BOARD OF WEST MIFFLIN

v.

**Borough of West Mifflin and Second Baptist Church of Homestead.**

**Appeal of Borough of West Mifflin.**

Noah's Ark Christian Child Care Center, Inc. and Strassburger McKenna Gutnick & Potter, Trustee

v.

**Zoning Hearing Board of the Borough of West Mifflin**

v.

**Borough of West Mifflin and Second Baptist Church of Homestead.**

**Appeal of Borough of West Mifflin.**

Commonwealth Court of Pennsylvania.

Argued May 6, 2003.
Decided Aug. 7, 2003.
Reargument En Banc Denied
Oct. 3, 2003.

Mike Adams and Mark J. Christman, Pittsburgh, for appellant.

Edwin J. Strassburger, Pittsburgh, for appellees.

BEFORE: SMITH–RIBNER, Judge, FRIEDMAN, Judge, KELLEY, Senior Judge.

SMITH–RIBNER, Judge.

The Borough of West Mifflin (Borough) appeals from an order of the Court of Common Pleas of Allegheny County that sustained the appeal of Noah's Ark Christian Child Care Center, Inc. (Noah's Ark) and Strassburger McKenna Gutnick & Potter, Trustee (Trustee) and reversed the decision of the Zoning Hearing Board of the Borough of West Mifflin. The Zoning Hearing Board, after a hearing, issued a decision and order affirming the denial by the Borough's Zoning Officer of the application of Noah's Ark for a certificate of occupancy to continue operating a day care facility after the property in which it was conducted would be sold to Second Baptist Church of Homestead (Second Baptist).[1]

## I

On a six-acre property at 612 Coal Road, West Mifflin is a two-story masonry building completed in 1998 for Grace Christian Ministries, Inc. (Grace Christian). Grace Christian operated a church in the structure pursuant to a conditional use approval granted by the Borough Council, and it operated a day care center in a portion of the building since June 1998. The Court of Common Pleas entered an order on November 20, 2002 stating that the day care center operation is held in a constructive trust managed by the Trustee; the order was later amended to include authority over the real estate. The Trustee proposes to sell the day care operation to Noah's Ark and the subject property to Second Baptist.[2] Second Baptist is located in Homestead, and it does not plan to relocate its church to the subject property. Second Baptist operates a day care center at its church in Homestead, which is not affiliated with Grace Christian or Noah's Ark. Noah's Ark is a for-profit commercial business founded by Paul T. Cassidy to purchase the day care operation. Cassidy is the assistant director of the current operation.

Noah's Ark applied for an occupancy permit to continue the day care operation, which the Zoning Officer denied on the ground that the proposed use was a business use that was not permitted in the R–2 medium density residential district. Noah's Ark appealed, and Second Baptist intervened. After a hearing on May 6, 2002, the Zoning Hearing Board issued a written decision on June 20, 2002 affirming the denial. The board found that church services have not taken place on the property since at least November 2001 and that the principal use of the property is and would continue to be as a commercial day care center. On the question of accessory use, the Zoning Hearing Board noted that Section 303 of the Borough's Zoning Ordinance permits "accessory uses, buildings and structures customarily incident to" a permitted principal use. Although "principal use" is not defined, Section 202 defines "accessory use" as "a use conducted on the same lot as a principal use to which it is related; which is clearly incidental to and customarily found in connection with a particular principal use." The board did not credit the claim that day care centers are customarily found in association with

1. The Borough states the following questions: (1) whether the trial court was arbitrary and capricious or erred in misapplying the standard of review; (2) whether the Zoning Hearing Board's finding that the proposed principal use for the realty was as a day care center was supported by substantial evidence; (3) whether the board's finding that the day care center is not an accessory use under the zoning ordinance is supported by substantial evidence; (4) whether the board's finding that the relationship between Second Baptist Church and Noah's Ark is primarily one of landlord and tenant is supported by substantial evidence; (5) whether the board's denial of an occupancy permit for a day care center in an R–2 medium density residential district is supported by substantial evidence; (6) whether the trial court was arbitrary and ca-

pricious or erred in concluding that the board improperly distinguished between for-profit and not-for-profit ownership; and (7) whether the trial court was arbitrary and capricious or erred in failing to consider the board's finding regarding health, safety and welfare of the community.

2. Although no specific findings on this point were made, Attorney Mark Christman testified on behalf of the Trustee that the former pastor of Grace Christian pled guilty to various criminal offenses that resulted in significant financial losses to church members, and the purpose of the appointment of the Trustee was to preserve the assets for the benefit of individuals who were victimized by that criminal activity. N.T. at p. 68.

churches, and it also rejected a claim of vested right to continue to use the premises for day care and denied the alternative request for a variance.

■ The trial court took no additional evidence on appeal by Noah's Ark and the Trustee. The court agreed that substantial evidence was produced to support a conclusion that the church activity would continue, quoting testimony of Tom Earhart on behalf of Second Baptist that not only would there be some type of formal service, but there would be weekly or daily scheduled events taking place in the building to further the community purposes of Second Baptist. The court stated that the zoning ordinance does not define "church" or "church use" or "church purpose," and it referred to the principle that ambiguous or undefined terms in an ordinance that restrict a permitted use should be construed broadly so as to give the landowner the benefit of the least restrictive use. *Appeal of Shirk*, 114 Pa.Cmwlth. 493, 539 A.2d 48 (1988). Noting that accessory uses are permitted as of right under the zoning ordinance, the court concluded that it is obvious that a day care center is an accessory use of a church. In addition, the board ignored testimony that the Christian focus of Noah's Ark was considered to be part of Second Baptist's ministry. Further, the difference between for-profit and not-for-profit corporate structure was not relevant and should not have been considered by the board. Concluding that the use was permitted as an accessory use, the trial court reversed the board.[3]

## II

■ The Borough first asserts that the trial court misapplied the standard of review. It notes that in zoning cases determinations as to the credibility of witnesses and the weight to be afforded evidence are solely for the zoning hearing board as fact finder. *Shamah v. Hellam Township Zoning Hearing Board*, 167 Pa.Cmwlth. 610, 648 A.2d 1299 (1994). Section 1005-A of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, added by Section 101 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 11005-A, provides that if the record includes findings of fact made by the governing body or zoning hearing board and the court does not take additional evidence, the findings shall not be disturbed if supported by substantial evidence. A reviewing court may not substitute its judgment for that of the local agency unless the board abused its discretion, *Nascone v. Ross Township Zoning Hearing Board*, 81 Pa.Cmwlth. 482, 473 A.2d 1141 (1984), which a board does only when its findings are not supported by substantial evidence. *Valley View Civic Ass'n v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983).

■ In closely related arguments the Borough contends that the Zoning Hearing Board's determinations that the proposed principal use of the property is for a day care center and that it is not an accessory use are factual determinations that are supported by substantial evidence. Under Section 303 of the Zoning Ordinance a commercial business is not permitted as of right in an R-2 district; however, a church is permitted as a conditional use, and under Section 202 an accessory use is permitted on the same lot as a principal

---

**3.** The Court dismissed a separate appeal filed by the Zoning Hearing Board at No. 2562 C.D. 2002. In zoning appeals, where the trial court took no additional evidence, the Court's review is limited to determining whether the board committed an abuse of discretion or an error of law. *Hersh v. Zoning Hearing Board of Marlborough Township*, 90 Pa.Cmwlth. 15, 493 A.2d 807 (1985).

use if it is "clearly incidental to and customarily found in connection with a particular principal use." Therefore, for an occupancy permit to be issued, the Board must determine that the principal use of the property is as a church and that the day care center is clearly incidental to church use and is customarily found in connection with such use.

The proposed lease between Noah's Ark and Second Baptist was not submitted as an exhibit, but a portion of it was read into the record.[4] The Borough argues that the lease makes no provision for Second Baptist ever to have use of the first floor of the building and that it provides for exclusive use by the tenant of 2700 of the 4000 square feet of the second floor twelve and one-half hours per day Monday through Friday, and that this fact alone supports the Zoning Hearing Board's findings. Further it relies on the fact that Second Baptist did not plan to move its church from Homestead to support the finding that the day care operation was the principal use.

Noah's Ark and the Trustee respond that substantial and uncontradicted evidence exists to support a determination that the church use would remain the principal use. Earhart testified that Second Baptist intended to bring its significant outreach programs to the community, referring to programs such as Teens for Christ and Mom's Fellowship. He stressed that church activities include more than traditional worship services, and he stated that there would be some type of formal service and also weekly or daily scheduled events on behalf of Second Baptist. They point out that in *Church of the Saviour v. Zoning Hearing Board of Tredyffrin Township,* 130 Pa.Cmwlth. 542, 568 A.2d 1336 (1989), this Court affirmed a trial court's reversal of a zoning hearing board's order denying a church's application to expand its special use permit to include professional counseling as well as pastoral counseling. Where the ordinance did not provide an objective definition of "church use," the Court disapproved the board's narrow, subjective interpretation of the correct parameters of religious practice and expression. In *Unitarian Universalist Church of Central Nassau v. Shorten,* 63 Misc.2d 978, 314 N.Y.S.2d 66 (N.Y.Sup.Ct.1970), the court adopted scholarly opinions that religious use is broadly extended to conduct with a religious purpose and that the concept of what constitutes a church has changed from a place of worship alone to a facility used during the entire week for various parochial and community functions and held that a day care operation was within the ambit of religious use.

As for the time devoted to church uses, Earhart consistently stated that outside the tenant's lease hours, the church will have the use of the entire building and that the church is a twenty-four hour oper-

---

4. The provision read by Earhart, N.T. at pp. 111–112, was as follows:

The premises shall include, one, the first floor of the building, including kitchen and restrooms, approximately 4,000 square feet; two, an exterior fenced-in area to the south of the building approximately 100 square feet; three, a portion of the parking lot to the north of the building, including parking space numbers one through ten, approximately 2500 square feet. Item four, the kitchen, meeting room and restrooms located on the second floor of the building, approximately 2700 square feet, only on weekdays, Monday through Friday, and only between the hours of 6 a.m. and 6:30 p.m. Tenant knows and understands that landlord may use the second floor of the building both before and after those hours reserved for tenant and that the areas must be left in a clean condition. Tenant's use of the second floor of the building during the hours set forth above is exclusive.

ation. No one testified that Noah's Ark would have use of any of the building on weekends or outside its permitted hours on weekdays. The Court therefore agrees that the Zoning Hearing Board erred in determining that the day care operation would become the principal use of the property. The board's ruling disregarded the fact that Second Baptist would be the owner of the entire property, not just the two-story building at issue. The board's statement in Finding of Fact No. 32 that no evidence was submitted by Second Baptist as to any religious services to be held on the subject property is contrary to the unrebutted testimony of Earhart. Further, the board's decision discounts the religious nature of the proposed activities sponsored by the church.

### III

■ The Borough next asserts that the Zoning Hearing Board's finding that the day care center is not an accessory use under the Zoning Ordinance is supported by substantial evidence, and it argues that Noah's Ark submitted insufficient evidence that for-profit day care centers are customarily found in connection with churches. Noah's Ark and the Trustee submit that no appellate court in Pennsylvania has decided the issue in this case but that the courts of other states have concluded that day care centers are accessory to church uses. As noted above, the court in *Unitarian Universalist Church* held that a day care operation by a church fell within the ambit of the religious activity of the church. Noah's Ark and the Trustee cite, as well, *City of Richmond Heights v. Richmond Heights Presbyterian Church,* 764 S.W.2d 647 (Mo.1989) (holding that a church-run day care center was an accessory use), and *Harvest Christian Center v. King George County Board of Zoning Appeals,* 55 Va. Cir. 279 (Va. Cir. Ct.2001) (same).

In *Shim v. Washington Township Planning Board,* 298 N.J.Super. 395, 689 A.2d 804 (App.Div.1997), the court discussed a day care center as an accessory use to a church to be constructed, and it stated that a use that is so necessary or commonly to be expected that it cannot be supposed that the ordinance intended to prevent it will be found to be a customary use. The court observed that the demand for day care in today's society cannot be questioned and that churches throughout the country have played a significant role in meeting this pressing need. It quoted 2 Arden H. and Daren A. Rathkopf, The Law of Zoning and Planning § 20.03 (4th ed.1985), as stating that accessory uses to churches include parochial schools, parking lots and playgrounds, rectories, gymnasiums and swimming pools, Boy Scout rooms and other places of quasi-public assembly, day care centers and drug rehabilitation centers. Citing research by the National Council of Churches summarized in Greg J. Matis, *Dilemma in Day Care: The Virtues of Administrative Accommodation,* 57 U. Chi. L.Rev. 573 (1990), the court stated: "Religious institutions consider day care centers as part of their spiritual mission, not necessarily in advancing their religious teachings, but by providing a valuable community service." *Shim,* 298 N.J.Super. at 408, 689 A.2d at 811.

The broad range of church-housed day care arrangements is illustrated in the article by Matis that is quoted in *Shim:*

[A]n ambitious study by the ecumenical National Council of Churches ("NCC") sheds some light on the contours of church involvement in day care. The NCC canvassed over 14,000 church-housed day care programs and concluded that "church-housed programs probably constitute the largest group of day care providers in the nation." . . . .

Significantly, forty-four percent of the study's church-housed programs were only that: church-housed, not church-operated. The churches' involvement in these programs is limited to that of a landlord, albeit a rather generous one. For the day care tenants the appeal is fairly obvious: in addition to subsidization or waiver of rent, utilities and maintenance costs, church day care tenants benefit from convenient locations, spaces that are often already designed for small children, and most importantly, the tax-exempt status of their gracious hosts. [The] churches view the arrangement as an opportunity to contribute their facilities to a worthy cause.

The other fifty-six percent of the study's programs were housed and operated by the host churches. The churches typically view day care as an aspect of their particular ministries: some host churches are simply trying to provide a valuable community service, or to meet the day care needs of their congregations' families; others act out of evangelism and a desire to promote Christian education. Yet despite these religious goals, almost none of the church-operated programs restrict participation to members of their own congregations, and "symbols, practices, and teachings commonly viewed as 'religious' are conspicuously absent from most church-operated programs."

*Matis* at 575–576 (footnotes omitted) (citing Eileen W. Lindner et al., When Churches Mind the Children: A Study of Day Care in Local Parishes (1983)).[5]

The history of the subject property, the academic sources relied upon by Noah's Ark and the Trustee, persuasive case law from other jurisdictions and common experience demonstrate that day care centers are customarily found in connection with churches. Just as the court indicated in *Shim* religious institutions, such as Second Baptist, consider day care centers to be a part of their mission. The Court thus concludes that the Zoning Hearing Board erred in determining that Noah's Ark day care operation is not a use customarily found in connection with churches, and it holds that the day care use is a proper accessory use to Second Baptist's use of the property as a whole.[6]

### IV

In its fifth-stated argument, the Borough asserts that the denial of an occupancy permit for a day care center in an R–2 medium density residential district is supported by substantial evidence, and it repeats its contentions, rejected above, that the day care operation would be the principal use. In its sixth-stated argument, the

5. Although not controlling, the Bankruptcy Court in *In re Grace Christian Ministries, Inc.*, 287 B.R. 352 (Bankr.W.D.Pa.2002), held that Grace Christian's proposed sale of its day care to a for-profit corporation did not transform the church into a for-profit corporation subject to involuntary bankruptcy under Section 303(a) of the Bankruptcy Code, 11 U.S.C. § 303(a).

6. The Borough asserts in its fourth-stated issue that the Zoning Hearing Board's finding that the relationship between Second Baptist and Noah's Ark is primarily a landlord-tenant relationship is supported by substantial evidence. This point, however, is not controverted. As the Borough notes, Earhart testified that Noah's Ark has no relationship with the religious missions of Second Baptist and that it would be totally independent of Second Baptist's day care at its other location. Earhart did state that it was important to have a good Christian foundation at a young age and that the church consented to and agreed with what Cassidy was doing, indicating general approval of Noah's Ark's operation, N.T. at pp. 118–119, but no one asserted that Noah's Ark would be managed by Second Baptist.

Borough contends that the trial court was arbitrary and capricious or committed an error of law by concluding that the Zoning Hearing Board made an improper distinction between for-profit and not-for-profit ownership. The Borough asserts that the board made one finding of fact based on the admission on behalf of Noah's Ark that it is a for-profit entity, but the board made no conclusion of law on that basis, and it argues that Noah's Ark's business status is irrelevant because the use would not be permitted even if it were not-for-profit. As noted, however, the board did conclude that for-profit day care centers, especially those not affiliated with the religious mission of a church, are not customarily found in connection with churches. In view of the broad range of relationships that exist between churches and day care centers, the Court concurs that the distinction between for-profit and not-for-profit day care operation should not be a central concern in determining its permissibility. To the extent that the board did give substantial weight to this factor, it erred.

Finally, the Borough argues that the trial court was arbitrary and capricious or erred in failing to consider the Zoning Hearing Board's findings regarding the health, safety and welfare of the community. Four local residents testified, and they expressed concerns about the speed of traffic on Coal Road, and the board found their testimony to be credible. The Borough maintains that zoning hearing boards are afforded wide latitude in enforcing the health, safety and welfare of their citizens, and the trial court should have taken this into account. Noah's Ark and the Trustee respond that a church use is permitted as a conditional use, i.e., there has been a legislative decision that the type of use is not adverse to the public interest per se, and the use may be denied only when it is shown that the adverse impact on the public interest exceeds that which might be expected in normal circumstances. *Pennridge Dev. Enters., Inc. v. Volovnik*, 154 Pa.Cmwlth. 609, 624 A.2d 674 (1993). They argue that the evidence did not meet that standard.

■ One resident, Lynn Smidansky, testified that she lived near the end of the driveway of the subject property, that her five children play on the road, that the road is falling apart and that cars fly out of the driveway. Nevertheless, she did not oppose the zoning approval, recognizing that people need day care, and she suggested a stop sign be placed at the end of the driveway. The Court notes that the Zoning Hearing Board's decision, apart from making one finding regarding the four residents who opposed the day care center, did not otherwise mention this point. No conclusion of law was premised upon this finding, and the Court therefore cannot conclude that the board's decision was based upon it. In sum, the Court concludes that the Zoning Hearing Board erred in failing to determine that a continuation of Noah's Ark will be permitted as an accessory use to the principal use of the property for church purposes.[7] The order of the trial court is affirmed.

### ORDER

AND NOW, this 7th day of August, 2003, the order of the Court of Common Pleas of Allegheny County is affirmed.

---

7. Noah's Ark and the Trustee further contend that the housing of a day care center is a *religious* practice that is protected by the free exercise clause of the First Amendment. However, a court should not reach constitutional issues where a case may decided upon non-constitutional grounds. *Johnson v. De-partment of Transportation, Bureau of Driver Licensing*, 805 A.2d 644 (Pa.Cmwlth.2002). Having decided the matter under state zoning law, the Court declines to consider a theory under federal law relating to religious uses of land.

DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority concludes, based solely on the uncontradicted testimony of Thomas B. Earhart, Esquire (Earhart), counsel for Second Baptist Church of Homestead (Second Baptist), that the Zoning Hearing Board (ZHB) of the Borough of West Mifflin (Borough) erred in finding that the principal use of the property at 612 Coal Road (Subject Property) is and will continue to be a commercial day care center. (Majority op. at 7; ZHB's Findings of Fact, Nos. 26, 35.) I cannot agree.

The ZHB specifically found that "Second Baptist *failed to submit credible evidence* regarding any *specific* future use of the Subject Property." (ZHB's Findings of Fact, No. 31) (emphasis added). Thus, the ZHB rejected the uncontradicted testimony of Earhart pertaining to Second Baptist's use of the Subject Property for church-related activities. Determinations as to the credibility of witnesses are matters left solely to the ZHB in the performance of its fact finding role. *Shamah v. Hellam Township Zoning Hearing Board,* 167 Pa.Cmwlth. 610, 648 A.2d 1299 (1994). Absent *any* credible evidence relating to Second Baptist's use of the Subject Property for church-related activities, the only possible principal use the ZHB could find for the Subject Property was as a commercial day care center.[1]

Accordingly, unlike the majority, I would reverse.

---

1. Without credible evidence to support a finding that Second Baptist will use the Subject Property as a church, it is not necessary to address whether a day care center constitutes an accessory use to a church.